### APPEAL OF KENTUCKY RIVER COAL CORPORATION.

Docket No. 2008. Submitted April 30, 1925. Decided February 9, 1926.

> During the taxable year 1919 the taxpayer had outstanding debenture stock, preferred stock, and common stock. During the year "dividends" were paid upon the debenture stock. *Held*, upon the evidence, that the shares of debenture stock outstanding were not obligations of the taxpayer for money borrowed, and that the taxpayer was not entitled to deduct from gross income for the year 1919 the dividends paid upon the debenture stock, or an amount for amortized discount upon such stock.

*Elwood Hamilton, Esq.*, for the taxpayer.
*Ellis W. Manning, Esq.*, for the Commissioner.

#### Before SMITH, LITTLETON, and GREEN.

This is an appeal from the determination of a deficiency in income and profits tax for the calendar year 1919 in the amount of $716.64. The questions presented by the appeal are whether the taxpayer is entitled to deduct from gross income (1) dividends paid upon debenture stock during the year 1919, and (2) an amount representing the amortized discount upon such stock allocable to the year 1919.

## FINDINGS OF FACT.

The Kentucky River Coal Corporation is a Virginia corporation with its principal office at Lexington, Ky. It was organized in April, 1915, for the purpose of acquiring the assets of five smaller coal companies.

It was not intended to and never has functioned as an operating company. Its principal activities have been the leasing or selling of its lands. The pertinent provisions of its charter are contained in article 5 thereof, as amended on October 23, 1916. The amended article differs from the original only in the amounts of preferred and common stock which might be issued, and reads as follows:

The amount of the total authorized minimum Capital Stock of said Corporation, which shall be Common Stock, shall be Three Thousand ($3,000.00) Dollars, and the amount of the total authorized maximum Capital Stock of said Corporation shall be Five Million, ($5,000,000.00) Dollars; which shall be composed of three classes of stock, designated as Debenture, Preferred and Common; each of the par value of One Hundred ($100.00) Dollars, per share, as follows:

    (1) Debenture stock_____ $500,000.00
    (2) Preferred stock_____ 2,000,000.00
    (3) Common stock_____ 2,500,000.00

The dividends on the said Debenture Stock shall be six (6%) per cent cumulative dividends from the date of issue payable semi-annually on the last days of January and July of each year; and said stock shall be retirable at the option of the Corporation after three years from the issue thereof at any dividend period at one hundred and five ($105) dollars per share, and unless prior retired, the Corporation shall retire the same at the expiration of ten (10) years from the date of issue at par; said stock shall contain the customary and usual provisions and regulations concerning the issue of stock, but not including voting rights, unless and in case of and only when in default of payment of dividends, and shall have priority both as to assets and income (up to six per cent) over both the preferred and common stocks.

The preferred stock shall likewise be a six (6%) per cent cumulative stock after January 1st, 1917, and may be retired at the option of the Corporation after three years from the issue thereof at any dividend period upon the payment of One Hundred and Five ($105) dollars per share, said dividends to be payable semi-annually on the 1st day of January and July of each year; and shall contain the customary and usual provisions and regulations concerning the issue of such stock, but not including voting rights, unless and in case of and only when in default in the payment of dividends, and shall have priority both as to assets and income (up to said six per cent) over the Common Stock.

No profits or income of said Corporation shall be applicable to the payment of dividends upon the Common stock, until and unless there is in the Treasury of the Corporation, and available for dividends, an amount sufficient to pay all dividends due upon the Debenture Stock and the Preferred Stock, and also at the dividend period next thereafter ensuing.

*The assets of the Corporation, in case of the sale of its property or dissolution, and after the payment of its indebtedness, shall be applied:*

*First: To the payment to the holders of the Debenture stock of the full amount of the par value of their shares and unpaid dividends accrued thereon.*

*Second: To the payments to the holders of the Preferred Stock of the full amount of the par value of their shares and the unpaid dividends accrued thereon; and*

*Third: The remaining to the Common Stock.*

The five hundred thousand ($500,000.00) dollars, debenture and five hundred thousand ($500,000.00) dollars, Common stock, to remain in the Treasury, and be disposed of as Treasury Stock for the benefit of this Corporation, and as its necessities may require; less such as may be necessary or required for expenses of organization and incidental thereto; but the proceeds of the Five Hundred Thousand ($500,000.00) Dollars Debenture Stock to be used exclusively in the discharge of the indebtedness of such Companies as may be assumed by this corporation, or for betterments, prospecting or acquiring additional property; and no debt in excess of Twenty-five thousand ($25,000.00) Dollars shall be incurred by this Corporation until the Debenture stock is retired.

All considerations received from sales of tracts of lands, mineral lands, or timber, shall be applied by this Corporation to the liquidation of the Debenture or Preferred Stock outstanding, and not otherwise, first liquidating the Debenture Stock, PROVIDED, that the provisions shall not apply to the exchange of lands or mineral rights for the purpose of rounding up a proposition, nor to the amount received as royalty upon coal mined, nor to timber included in leases, or construction of improvements upon the property, or used for railway ties or other railroad equipment. (Italics ours.)

The debenture stock certificate reads as follows:

Incorporated under the laws of the State of Virginia.

No. ——                                        —— Shares.

KENTUCKY RIVER COAL CORPORATION.

Maximum authorized Capital Stock $3,329,800.00

Divided into

Debenture Stock $500,000.00   Preferred Stock $1,164,900.00

Common Stock $1,664,900.00

This certifies that —— —— is the owner of —— full paid and non-assessable shares of the Debenture Capital Stock of the Kentucky River Coal Corporation, transferable in person or by attorney upon the surrender of this certificate, properly endorsed. The holders of the Debenture Stock shall be entitled to receive, and the Corporation shall be obligated to pay, but only out of the surplus profits, earnings or assets of the Corporation, dividends at the rate of six (6) per cent, per annum, and no more, payable semi-annually in each year on the first days of Jany. and July, before any dividend shall be paid upon, or set apart for the Preferred or Common Stock. Dividends on the Debenture Stock shall be cumulative from date of issue. The holders of the Preferred Stock shall be entitled to receive, and the Corporation shall be obligated to pay, but only out of the surplus profits, earnings or assets of the Corporation, dividends at the rate of six (6) per cent per annum, and no more, payable semi-annually in each year, on the first days of Jany. and July, before any dividends shall be paid upon, or set apart for the Common Stock. Dividends on the Preferred Stock shall be cumulative from and after January 1st, 1917. In no event shall any dividends whatsoever be declared or paid on

the Common Stock, until and unless there is in the Treasury of the Corporation, and available for dividends an amount sufficient to pay all dividends due upon the Debenture Stock, and the Preferred Stock, and also at the dividend period next thereafter ensuing, subject to the foregoing provisions, and not otherwise, such dividends as may be determined by the Board of Directors may be declared and paid on the Common Stock from time to time out of the surplus profits, earnings or assets of the Corporation. The Board of Directors shall have power from time to time, to fix and determine, and to vary the amount of the working capital of the Corporation, and to direct and determine the use and disposition of any surplus profits of the Corporation, over and above the Capital Stock paid in. The Debenture and the Preferred Stock shall be retirable at the option of the Corporation after three years from the issue thereof, at any dividend period, upon the payment of $105.00 per share, and all accumulated unpaid dividends thereupon, and unless prior retired, the Corporation shall retire the Debenture Stock at the expiration of ten years from the date of issue at par with all accumulated and unpaid dividends thereupon. Neither the holders of shares of the Debenture or Preferred Stock shall have voting rights, unless and in case of, and only when in default of payment of dividends, but when so in default, and only when so in default, the holders of the Debenture and Preferred Stock shall have the same voting rights as the holders of the shares of the Common Stock. Upon any dissolution or liquidation of the Corporation, or upon any distribution of capital, or in the event of insolvency of the Corporation, the assets of the Corporation shall be applied: First, to the payment to all the holders of the Debenture Stock of the full amount of the par value of their shares, and unpaid dividends accrued thereon; Second, to the payment to all the holders of the Preferred Stock of the full amount of the par value of their shares and the unpaid dividends accrued thereon; and Third, the remainder to the holders of the Common Stock. The Proceeds of the $500,000.00 Debenture Stock shall be used exclusively for the purposes specified and set forth in the Certificate of Incorporation; and no debt in excess of $25,000.00 except that to be assumed by the Corporation to retire which the Debenture Stock is in part to be used, shall be incurred by this Corporation, until the Debenture stock is retired. All consideration received from the sources specified in the Certificate of Incorporation shall be applied to retire the Debenture or Preferred Stock outstanding, and not otherwise, first retiring the Debenture Stock.

This certificate is not valid until countersigned by the Transfer Agent and registered by the Registrar.

Witness the seal of the Corporation, and the signatures of its duly authorized officers, this ——

——— ——— Secretary                               ——— ——— President

Countersigned ——— ———

    THE FIDELITY TRUST COMPANY, (of Baltimore), Md.
                                    Transfer Agent

By ——— ———

      Secretary
    Asst. Secretary.

                Registered ———
                   UNION TRUST COMPANY OF MARYLAND
                                    Registrar

         By ——— ———

                Secretary
              Asst. Secretary

SHARES

Full paid and—$100—non-assessable

EACH

" CHARTER AMENDED " October 23rd, 1916: Capital Stock authorized thereby $5,000,000.00, divided into Debenture Stock $500,000.00. Preferred Stock $2,000,000.00 and Common Stock $2,500,000.00.

All of the preferred stock and a like amount of the common stock were exchanged for the assets of stock of the five companies. The $500,000 par value of debenture stock and a like amount of common stock were placed on the market and sold together, the price of one share of debenture stock and one share of common stock being $50. The first shares of debenture stock were issued on May 2, 1915, and the last on January 24, 1917. The entire issue of $500,000 was outstanding during the entire year 1919. The taxpayer began to retire the debenture stock in 1922, and up to April 14, 1925, the amount retired was $245,200. The amount outstanding on that date was $254,800. The holders of the debenture stock have never participated in the activities of the corporation. They have received annually dividends amounting to 6 per cent on the par value of the shares outstanding.

The taxpayer in its income-tax return for 1919 claimed as deductions from gross income dividends paid upon the debenture stock in the aggregate amount of $30,000, and amortized discount in the amount of $25,000. Both of these deductions have been disallowed by the Commissioner.

DECISION.

The determination of the Commissioner is approved.

OPINION.

SMITH: The questions here presented are purely legal. The taxpayer claims the right to deduct from gross income of the year 1919 $30,000, representing dividends paid upon $500,000 par value debenture stock outstanding during the year, and $25,000 amortized discount upon such stock. The Commissioner denies the right of the taxpayer to make such deductions. The claim of the taxpayer is that the debenture stock outstanding represents bonds or obligations of the taxpayer, while the claim of the Commissioner is that the debenture stock is a part of the capital stock of the taxpayer.

Section 234(a)(2) of the Revenue Act of 1918 provides that a corporation may deduct from gross income in its tax return " all

interest paid or accrued within the taxable year on its indebtedness * * *." Was the $500,000 debenture stock of the taxpayer outstanding during the year 1919 indebtedness of the taxpayer during that year?

Whether or not the holder of a particular instrument or certificate is to be regarded as a stockholder or creditor is a question of interpretation, and depends upon the terms of his contract as evidenced by such instrument and the corporate charter and the statutes of the state. Fletcher on Corporations, p. 6020. Cf. *Heller* v. *National Marine Bank*, 89 Md. 602.

In *Appeal of I. Unterberg & Co.*, 2 B. T. A. 274, we said:

It can not be doubted that the nature of an instrument may, because of its terms and the circumstances of its issuance and substance, be held to be different from what it is denominated. The decisions are numerous in which the courts have held bonds to be stock. Cf. *Appeal of The Baker & Taylor Company*, 3 B. T. A. 57.

The first thing to be considered in the determination of whether the shares of debenture stock issued by the taxpayer and outstanding during the year 1919 are obligations of the taxpayer or a part of its capital stock, is the name which has been given to such shares of debenture stock. It is not a thing to be ignored, for it is not lightly to be assumed that parties have given an erroneous name to their transaction. The instruments are designated as " shares of debenture stock." They provide for 6 per cent cumulative dividends and no more, payable only out of surplus profits, earnings or assets; these dividends are to have priority over dividends on issues designated as preferred and common stock. They contain a provision for their retirement at the option of the corporation after three years and in any event at the expiration of 10 years. The holders have no right to vote, except in case of default in payment of dividends. In case of dissolution, liquidation or insolvency, the assets are to be first applied in payment of the indebtedness of the corporation. They are then to be applied:

First: To the payment to the holders of the Debenture stock of the full amount of the par value of their shares and unpaid dividends accrued thereon.

Second: To the payments to the holders of the Preferred Stock of the full amount of the par value of their shares and the unpaid dividends accrued thereon; and

Third: The remaining to the Common Stock.

The question whether debenture stock is to be regarded as a part of the capital stock of a corporation has been before the courts in many different jurisdictions.

In *People* v. *Miller*, 180 N. Y. 16; 72 N. E. 525, there was a question, in determining the franchise tax of a corporation, whether $100,000 representing certain certificates should be deducted as a debt. The certificate of incorporation provided for $100,000 "preferred debenture stock," entitled to cumulative dividends at 6 per cent, and $50,000 common stock. The certificates of preferred stock as issued provided for a cumulative dividend of 6 per cent, and no more, before dividends on common stock, and for preference over common stock on dissolution of the corporation. They also contained an agreement for redemption at par value on a specified date. In its decision the court said:

When, therefore, a certificate is declared to be a preferred debenture share of capital stock, it presents a legal contradiction; a debenture being the acknowledgment of a debt, and a share of stock representing a contribution of capital to a corporate business equal to the amount of its face value, either in money or in property.

The court held that where the construction of instruments purporting to be certificates of preferred stock of a corporation is a debatable one, the corporation, in face of the declaration in its articles of association that money represented by these certificates constitutes a part of the capital stock of the corporation, is estopped from asserting to the contrary in a proceeding to determine its liability to the franchise tax.

In *Rider* v. *Delker & Sons Co.*, 145 Ky. 634; 140 S. W. 1011, it was held that, even though the certificate of incorporation and the certificate of stock itself provided that after five years the holder of preferred stock might demand back his money in the corporation, he can not enforce this provision until the corporate creditors are paid. The court said:

The capital of a corporation is the sum total of its stock, whether common or preferred. Certificates of stock are mere evidences that the holders thereof have invested the sums called for in the certificates in the enterprise. They run the risk of losing their stock if the business is not a success. As between themselves and third persons who deal with the corporation and give it credit, their stock is equally liable. It is only in cases where the corporation is solvent and the rights of creditors will not be injuriously affected thereby that agreements as to preferences among themselves may be enforced. The entire capital, without regard to any arrangement which may exist between common and preferred stockholders, is at all times subject to and liable for the debts of the corporation, and no part of the capital can be withdrawn from the business until the debts of the corporation are satisfied.

In the case of *Reagan Bale Co.* v. *Heuermann*, 149 S. W. 228, a Texas corporation issued preferred stock entitled to a preferred divi-

dend of 8 per cent and to share equally with common stockholders in all dividends after a similar dividend had been earned and paid on common stock. It also provided that, if the company should fail for two years to declare and pay dividends on the preferred stock of at least 8 per cent, the owners at their option might mature the shares into an obligation of the corporation to pay on demand the par value thereof, together with interest at 8 per cent from August 10, 1907, provided that the corporation should then be entitled to be credited with all dividends declared and paid on the stock. The preferred stock had no voting power, and the company was also given the option, after the aggregate dividends thereon amounted to 100 per cent, to retire the shares at par. It was held that the holders of such stock were stockholders and not creditors, and, on default of dividends, could not, by electing to mature the shares, become creditors entitled to share in the assets of the corporation with or in advance of creditors.

In *Warren* v. *Queen & Co.*, 240 Pa. 154; 87 Atl. 595, there was a suit to recover amounts represented by certificates in the following form:

This is to certify that J. Henry Warren is owner of fifty shares of the preferred stock of Queen & Company, Incorporated. * * * This certificate is part of an issue of preferred shares amounting in the aggregate to fifty thousand dollars ($50,000) which are entitled to dividends at the rate of eight per centum annually, clear 'of all taxes, cumulative, from the first day of March, 1906, out of the earnings of the company applicable to the purpose, and before any dividend is declared on the common stock. * * * The shares represented by this certificate shall be redeemed by the company on March 1, 1911, at par. The preferred stock, of which these shares are a part, constitute under all circumstances a lien on all the assets of the company to be first paid in full prior to any right of the common stock to participate in or receive anything from such assets.

The court held that these instruments were shares of stock and not certificates of indebtedness, and that the agreement to redeem them could not be enforced unless there were surplus profits which could be used for that purpose.

In the case of *In re Fechheimer Fishel Co.*, 212 Fed. 357, the certificates were designated on their face as debenture bonds. These so-called bonds prescribed a certain date of payment, and a certain amount of interest, but also contained a provision that the interest should be paid out of earnings and that all of these instruments should be subordinate to the claims of creditors. They further provided that, upon liquidation or dissolution of the company, the holders of the bonds should, after payment of debts, be entitled to the residue of the company's assets. The court held that the instru-

ments were shares of stock and refused to enforce a promissory note given to one of the holders, upon surrender of some of the so-called bonds, because to do so would deprive general creditors of funds to satisfy their claims.

In *Miller* v. *Ratterman*, 47 Oh. St. 141; 24 N. E. 496, the certificates involved purported to be shares of preferred stock, to guarantee dividends for which a mortgage had been given. They were held to be stock.

After a consideration of the entire record and of the decisions of the courts bearing upon the issues raised by this appeal, we are of the opinion that the conclusion of the Commissioner that the dividends paid by the taxpayer upon its shares of debenture stock outstanding during the year 1919 were not the equivalent of interest paid on indebtedness, and, therefore, that the amount of dividends paid upon such stock is not a legal deduction from gross income. We are also of the opinion that the amount claimed as amortized discount upon such debenture stock is not a legal deduction from gross income.

LITTLETON concurring.

GREEN, dissenting: I am unable to concur with the foregoing decision and opinion. As therein stated, the questions are purely legal. We are first called upon to determine whether the security sold by the corporation is a stock or a bond. In determining this question the courts have consistently disregarded the name which the parties have given to the security and have determined its true character from the qualities and properties of the security and the rights and obligations of the parties. It is obvious that this security is not the conventional preferred stock, though it has some of the characteristics of preferred stock. It is provided in the charter that it shall be retired at par within ten years from the date of issue. The holders thereof have voting rights only in case of default in the payment of the so-called dividends. No indebtedness in excess of $25,000 should be incurred until the stock is retired. It was given a priority, both as to income and assets, over the preferred and common stock. The so-called dividend was cumulative and at a fixed rate. The proceeds of all sales of assets are to be applied first to the payment to the holders of the debenture stock of the full amount of the par value of their stock and the unpaid dividends thereon.

Summarizing the foregoing, it appears that there is a promise to pay a specific sum of money, on or before a certain date, with interest

at a specified rate, which promise to pay is guaranteed by the limitation on general indebtedness and a preference given as to payment. It is not necessary to hold that there is a lien or a mortgage to secure the payment. The limitation of indebtedness, coupled with the preference, accomplishes practically the same result.

The relative priority between a general creditor and the holder of a security is commonly and properly considered to be one of the important factors in determining whether a security is a stock or a bond. It is an important factor in this case. The position of the holders of this debenture stock would be vastly different if there were no limit on the amount of indebtedness to general creditors which could be incurred by the corporation. Considering the value of the assets behind this corporation, the maximum indebtedness to general creditors permitted by the charter is a mere trifle. For all practical purposes, so far as the holders of this stock are concerned, there are and can be no general creditors. Assuming that the maximum permitted indebtedness to general creditors was incurred and paid, the impairment of assets as the result thereof would be insignificant.

The purpose of the corporation was not to mine coal but was, instead, to sell or lease the coal-bearing lands which it owned. The continued use of large amounts of capital was not necessary. The holders of the certificates were not investors in the business. They knew at the time they acquired the stock that the company would soon start retiring it. There is nothing in the record to indicate that any of the interested parties considered the holders of the certificates to be stockholders in the commonly accepted sense of that term. On the contrary, all of the indications are that they were considered as creditors.

The courts have always given careful consideration to the interpretation of a contract by the parties thereto, as evidenced by their performance of its terms, and there is no occasion to depart from a rule so well established.

The problem is simplified by reversing it. Are these certificates shares of stock? Could the cash or property paid in therefor properly be included in invested capital?

In the *Appeal of I. Unterberg & Co.*, 2 B. T. A. 274, we said:

It [the certificate] promises to pay a specified amount, with interest, to a definite person at a definite time. Then follows the restrictive condition that it is subordinate to the claims of general business creditors at maturity or on liquidation. This latter condition, the taxpayer contends, is such that it converts the instrument into preferred stock. The contention is that by sub-

ordinating the right of the holder to that of the general creditors the instrument represents property placed at the risk of the business and not property loaned to the corporation. In other words, the dominant feature is said to be the condition and the risk and not the promise to pay.

There we also said:

Examining the terms and effect of the instrument, we are unable to hold it to be a certificate of stock. It is evidence of a restricted indebtedness. The fact that the principal amount is subordinated to the claims of general business creditors is not sufficient to warrant this Board's determination that it is stock for the purpose of invested capital, when for all other purposes so far as we are advised the parties have treated it as a note. The interest is payable semi-annualy in any event. Has it been paid, and has it been deducted as interest in computing taxable net income? Has the capital-stock-tax return included the amount of these instruments as the basis of tax? Have the amounts of these notes ever been subjected to any of the tests or vicissitudes of stock? The evidence does not inform us. We are not inclined therefore didactically to say that these are certificates of stock for tax purposes in the absence of convincing evidence that they are regarded as such for other purposes or convincing argument that they must be held to be such for all purposes notwithstanding the apparent intention of the interested parties to the contrary. As counsel for the taxpayer says, they can not be both stock and notes, and having presumably given them full effect as notes during their life, we will not now say they were stock.

It is clear that the certificates now being considered are in their essentials very similar to those in *Unterberg's Appeal, supra*, and the *Appeal of A. H. Stange Co.*, 1 B. T. A. 58. If in those appeals the certificates were bonds, the conclusion should be the same here.

In *Unterberg's Appeal* (similar in facts, except that the limit of general indebtedness is lower), we state:

They were payable at maturity, subject to the claims of general creditors. They were an obligation of the corporation, enforcible in all respects except that the general creditors might insist that assets should not be impaired below the amount of their claims. They were of lower degree than such claims, and yet fixed in amount and time so as to distinguish them from stock. Indeed, it may be asked why, if after all they were stock, such care was used to limit the stock to $200,000 and issue notes for the rest? Apparently it may be inferred that the owners were willing to venture $200,000 in the business, but desired to be assured of the return of the $236,000 except in case of failure within three years. One was a business risk and the other a reasonably safe three-year investment.

A consideration of all of the factors in this case leads me directly to the conclusion that the holders of these debenture stocks are creditors of the corporation, and that the sums paid therefor are loans rather than contributions of capital. The so-called dividend is in reality interest and should be deducted as an expense when paid or accrued, depending upon the method of accounting employed by the taxpayer.

The sale of these debentures at a discount is analogous to the sale of bonds at a discount, and the amount of the discount should be amortized and the aliquot part deducted annually.