## H. R. DE MILT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8541.   Promulgated May 20, 1927.

1. Upon the organization of the petitioner, it issued twenty-year 6 per cent debentures and common stock for the assets of an existing partnership. *Held,* upon the evidence, that the debentures represent evidences of indebtedness and may not be included in invested capital.

2. The selling price of certain shares of stock for cash immediately after organization of a corporation is not sufficient of itself to establish the value of good will.

*Ben Jenkins, Esq.,* and *William A. Daly, Esq.,* for the petitioner.
*L. C. Mitchell, Esq.,* for the respondent.

This proceeding involves a deficiency for the calendar year 1920 in the amount of $1,835.99.

The issues presented are: (1) Whether the Commissioner erred in excluding from invested capital $50,000, representing 6 per cent twenty-year debentures, on the ground that the debentures represented borrowed money and were not, in effect, stock, and (2) whether the Commissioner erroneously excluded from invested capital any value for good will acquired in exchange for capital stock.

### FINDINGS OF FACT.

The petitioner, a New York corporation, was organized on January 1, 1907, with an authorized capital stock of $100,000, divided into 1,000 shares. At incorporation it issued its entire capital stock (except two qualifying shares) to H. R. De Milt for the partnership assets of H. R. De Milt & Co., a business which had been in existence since 1889. The partners were H. R. De Milt and Albert Bieling, though the assets were owned entirely by De Milt. In acquiring the assets of the partnership, a purchase and sale agreement was entered into between De Milt and the corporation, by

108346°—28——4

which the corporation received all of the tangible assets, inventoried at $85,000, in exchange for $35,000 par value in stock and $50,000 par value of 6 per cent twenty-year debentures. By the same instrument, but expressed therein as a separate transaction, the good will of the partnership was transferred to the corporation in exchange for the remaining $65,000 par value of stock.

Within a few days after incorporation, De Milt sold 140 shares of the common stock, which had been issued to him, to Bieling, his former partner, for $7,000 cash. About the same time 20 shares were sold to one Ellsworth for $1,000 cash.

The debentures in controversy read as follows:

UNITED STATES OF AMERICA
STATE OF NEW YORK

H. R. DE MILT COMPANY

Twenty-Year Six Per Cent Income Debenture

H. R. DE MILT COMPANY, a corporation of the State of New York (hereinafter called the "Company"), is indebted and, for value received, promises to pay to the registered holder, hereof the sum of ONE THOUSAND DOLLARS ($1,000.) in lawful money of the United States of America, on the first day of January, 1927, or on such earlier day as the same may become due and payable in accordance with the provisions hereof, and to pay interest annually on said sum in like lawful money, at the office of the Company in the City of New York, at the rate of Six Per Cent per annum, on the thirty-first day of January in each year, such interest to be payable only out of surplus or net profits as hereinafter provided. IT IS UNDERSTOOD AND AGREED that the payment of the principal of this debenture and of the other debentures of this series shall always be postponed to the prior payment in full of all other lawful debts and obligations of the Company.

THIS DEBENTURE is one of a series of fifty debentures, numbered consecutively from 1 to 50, both inclusive, all bearing even date and each for the principal sum of One Thousand Dollars ($1,000.)

Each year's interest on the debentures of this series shall be payable upon such debentures, then outstanding, *pari passu* out of the net profits arising from the business of the company for the year ending December 31st, immediately preceding the time of payment thereof, and such interest shall be cumulative from the date hereof, that is to say, if such interest shall not be earned and paid in respect of any yearly period as aforesaid it shall be payable out of subsequent net profits or out of any surplus available therefor. Such interest shall be payable in priority to the payment of any dividends on the capital stock of the Company.

This debenture shall immediately become due and payable if a judgment or decree is rendered for the dissolution of the Company by any Court of competent jurisdiction, or if the Company is adjudicated a bankrupt or insolvent, or if an effective resolution is adopted by the stockholders for the voluntary dissolution or winding up of the Company.

THIS DEBENTURE may be redeemed by the Company at any time after five years from the date hereof at the price of One thousand and sixty dollars, and

interest accumulated and unpaid hereon, upon thirty days' notice in writing sent by mail or delivered personally to the registered holder hereof, or upon such shorter notice as shall be accepted by such holder.

A register of the debentures will be kept at the Company's office wherein there will be entered the names and addresses of the registered holders and particulars of the debentures held by them, respectively.

Every transfer of this debenture shall be in writing, signed by the registered holder, or by his legal representative. Such instrument of transfer accompanied by this debenture shall be delivered at the Company's principal office, and such transfer shall be duly acknowledged, if required by the Company, and thereupon the transfer shall be registered and a note of such registration shall be endorsed hereon. The Company shall be entitled to retain the instrument of transfer. * * *

The petitioner in its income and profits-tax return claimed the par value of the debentures as a part of its invested capital, and also took as a deduction $3,000 as interest paid on the debentures, though it now admits that if its contention as to invested capital prevails, the deduction for interest was erroneous.

OPINION.

LITTLETON: The question of whether or not instruments somewhat similar in character to the one here in question should be considered as capital stock or evidence of indebtedness has been before the Board on several occasions and in each instance it has been emphasized that the final determination must be made upon a legal interpretation of the meaning of the entire instrument and not upon the name by which it was denominated. Fletcher's Cyclopedia on Corporations, vol. 6, p. 6020, lays down the principle that:

Whether or not the holder of a particular instrument or certificate is to be regarded as a stockholder or a creditor is a question of interpretation, and depends upon the terms of his contract as evidenced by such instrument and the corporate charter and the statutes of the state.

We said, however, in *Appeal of Kentucky River Coal Corporation*, 3 B. T. A. 644, that the name given to an instrument by the parties " is not a thing to be ignored, for it is not lightly to be assumed that parties have given an erroneous name to their transaction."

As distinguished from other apparently similar cases considered by the Board, this instrument is entitled a twenty-year 6 per cent debenture and not debenture stock or debenture bonds, as was true in other cases. Bouvier's Law Dictionary, p. 783, defines the term " debenture " as an instrument in writing, generally under seal, creating a definite charge on a definite or indefinite fund or subject of property, payable to a given person, etc., and usually constituting one of a series of similar instruments. Such a definition would define, ordinarily, an evidence of indebtedness, and not stock which is

not a definite charge on property. See *Appeal of A. H. Stange Co.,*
1 B. T. A. 58.

We said in *Arthur R. Jones Syndicate* v. *Commissioner*, 5 B. T. A.
853, that:

> The fundamental characteristic of a share of stock is that the holder is
> a coowner of the business and not a creditor.

That the parties themselves considered this instrument as placing
a definite charge on the property is indicated by its fourth paragraph:

> This debenture shall immediately become due and payable if a judgment
> or decree is rendered for the dissolution of the Company by any Court of
> competent jurisdiction, or if the Company is adjudicated a bankrupt or
> insolvent, or if an effective resolution is adopted by the stockholders for
> the voluntary dissolution or winding up of the Company.

What the owner of a debenture would receive under such circum-
stances would be confined to a return of the principal and interest
and would, in no sense, allow him to share in additional assets as a
coowner of the business.

Further, we find, in the instrument, such phrases as the petitioner
" is indebted and  *  *  *  promises to pay  *  *  *  as the same
may become due and payable  *  *  *  and to pay interest annually
*  *  *  and such interest to be payable only out of surplus or
net profits  *  *  *." All of the above expressions are used, gener-
ally, in connection with debts owing, rather than with capital stock,
except as to the payment of the interest " out of surplus or net
profits."

As possibly indicating that the instrument might have been con-
sidered by the parties as some specie of stock we find the proviso:
" IT IS UNDERSTOOD AND AGREED that the payment of the principal
of this debenture and of other debentures of this series shall always
be postponed to the prior payment in full of all other lawful debts
and obligations of the Company." But we found in *Appeal of I.
Unterberg & Co.* 2 B. T. A. 274, that " The fact that the principal
amount is subordinated to the claims of general business creditors is
not sufficient to warrant this Board's determination that it is stock
for the purpose of invested capital, when for all other purposes so
far as we are advised the parties have treated it as a note." Further,
in the same opinion we say that " They were an obligation of the
corporation, enforcible in all respects except that the general creditors
might insist that assets should not be impaired below the amount of
their claims." In other words the holders of these debentures would
seem to have enforcible evidences of indebtedness, ahead of which
would come the claims of general creditors, but which must be satis-
fied before any distribution of assets is made to stockholders in
liquidation.

Nor do we think the fact that the interest was to be paid out of "surplus or net profits" would be controlling. We are concerned here with the principal itself, which is an enforcible lien against the assets of the corporation and which is subject to repayment in twenty years. To the extent of the interest to be received, the holders of these debentures were subject to the hazards of the business in a similar manner to stockholders, since no provision is made for the payment of unpaid interest from the assets of the company on final liquidation and, therefore, would be paid only to the extent of accumulated earnings, but the interest even then would rank ahead of dividends on common stock.

We consider it significant that the instrument speaks of the principal as becoming "due and payable" on a particular date, though subject to payment at a prior date. Such phraseology is more consistent with the idea of a loan than of capital stock. Debts become "due and payable" whereas we ordinarily think of stock as being "retired," when any provision is made for payment prior to dissolution of the corporation.

While the petitioner now admits its error, the fact can not be overlooked that the petitioner deducted from gross income interest on these debentures when it filed its income and profits-tax return, though claiming the par value of them in invested capital. This would indicate that it considered the interest as a proper charge against its business operations.

Looking to the terms and legal effect of the instrument and taking into consideration the testimony offered, we are of opinion that this was a loan and not a capital stock investment. We must hold, therefore, that the action of the Commissioner in excluding these debentures from invested capital was correct.

In rendering this opinion, we are not unmindful of our decisions in the *Appeal of Kentucky River Coal Corporation*, 3 B. T. A. 644, where we held that certain debenture stock was not an obligation of a taxpayer for money borrowed; the *Appeal of Leasehold Realty Co.*, 3 B. T. A. 1129, where we held that certain preferred stock did not constitute evidence of indebtedness; and in *Arthur R. Jones Syndicate*, 5 B. T. A. 853, where we held that the amount paid for the use of money for which first preferred shares were issued, represented the payment of a dividend and not the payment of interest on debtedness, but for the reasons given we think these cases are distinguishable from this proceeding.

The other question is the value of the good will for which $65,000 common stock was issued. Since this stock was issued specifically for good will and a specific amount of common stock and debentures was given for tangibles, we are not concerned with a situation where

a mixed aggregate of tangibles and intangibles were acquired for stock and bonds such as we had in the *Appeal of St. Louis Screw Co.*, 2 B. T. A. 649. Our only proposition is to determine whether the good will which was acquired for $65,000 common stock had a value which can be recognized for invested capital purposes.

No evidence was presented either as to the earnings of the partnership prior to the organization of the corporation or as to the earnings of the corporation subsequent thereto. The only evidence consists of two sales of stock for cash about the date of issue, one of 140 shares at $50 (par $100) and another of 20 shares at the same price. The sale of 140 shares was made to a former partner who apparently was familiar with the past history of the business and present prospects of the corporation. The sales were representative in amount, constituting 17 per cent of the total stock issued. The purchaser of this stock may have been looking to the return of tangibles without regard to a going-concern value.

We are of the opinion that the above evidence standing alone is not sufficient to establish a value for the good will. The valuation of good will is a question of fact and must be determined on the evidence in the record. *Appeal of Schulz Baking Co.*, 3 B. T. A. 470.

In the foregoing case we recognized the selling price of stock immediately after incorporation in determining the value of the property, including good will acquired for stock, but the stock sales were not the only evidence. We had in addition evidence showing that the corporation acquired a thriving and growing business, that the former proprietor had built up a reputation in the town where the plant was located and that the number of customers was both large and constant. No such evidence is presented in this case. We have no evidence as to the past history or future prospects of the company; evidence which we consider essential in establishing a value for good will.

In the *Appeal of Pevely Dairy Co.*, 1 B. T. A. 385, the Board said:

Good will is not something which can be delivered like merchandise, but as recognized in all the definitions, it is the *probability* or *expectation* of retaining the old customers and that probability or expectation is all a purchaser can acquire.

We must, therefore, hold that the petitioner has failed to establish any value for good will, and that the determination as made by the Commissioner was correct.

*Judgment will be entered for the respondent.*