THE PROCTOR SHOP, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 58909, 66268. Promulgated May 16, 1934.

*Roscoe C. Nelson, Esq.*, for the petitioner.
*Warren F. Wattles, Esq.*, for the respondent.

OPINION.

ARUNDELL: The first question is whether petitioner's payments to Aaron Holtz of 6 percent on his " debenture preference stock " were payments of dividends or interest. Petitioner claims that the real relation between it and Holtz was that of debtor and creditor and the annual sums paid are deductible as interest on borrowed money.

This question has been presented a number of times to the Board and the courts under slightly varying facts. In some cases the so-called stock was to be retired at a fixed date, *Arthur R. Jones Syndicate*, 5 B.T.A. 853; reversed, 23 Fed. (2d) 833, and in others at the option of the corporation or the stockholder, *Finance & Investment Corp.*, 19 B.T.A. 643; affd., 57 Fed. (2d) 444. In some cases the interest or dividends were payable regardless of earnings, *Wiggin Terminals, Inc.* v. *United States*, 36 Fed. (2d) 893, and in others payments were to be made only out of surplus or profits, *Kentucky River Coal Corp.* v. *Lucas*, 51 Fed. (2d) 586, sustaining 3 B.T.A. 644; *Badger Lumber Co.*, 23 B.T.A. 362; *Elko Lamoille Power Co.*, 21 B.T.A. 291; affd., 50 Fed. (2d) 595. None of the decided cases lay down any comprehensive rule by which the question presented may be decided in all cases, and " the decision in each case turns upon the facts of that case." *Nowland Realty Co.* v. *Commissioner*, 47 Fed. (2d) 1018; affirming 18 B.T.A. 405; *Arthur R. Jones Syndicate, supra; Garden Homes Co.* v. *Commissioner*, 64 Fed. (2d) 593, 598. In each case it must be determined whether the real transaction was that of an investment in the corporation or a loan to it. On this the designation of the instrument issued by the corporation, while not to be ignored, is not conclusive, *I. Unterberg & Co.*, 2 B.T.A. 274. The real intention of the parties is to be sought and in order to establish it evidence *aliunde* the contract is admissible. *Arthur R. Jones Syndicate, supra.* If the evidence establishes " that dividends paid are, according to the intent of the parties, in fact interest, and the stock on which the dividends are paid is merely held by the creditor as security, it makes no difference what the reason was for paying in that form." *Wiggin Terminals, Inc.* v. *United States, supra.*

In the present case it was obviously the intent of the interested parties that the $99,000 advanced by Aaron Holtz to the petitioner corporation was to be regarded as a loan. The uncontradicted evi-

dence is that Holtz did not want to stand in the relation of a stockholder to the corporation. He wanted a definite income from the money advanced and assurance that he would be repaid. The only reason for not openly treating the $99,000 as a loan was to aid the corporation in obtaining a credit rating. The lender was not restricted to corporate earnings for the return on his advances, and upon default for two years had a right of action against the corporation for both principal and interest. It is our opinion that in reality the relation of Aaron Holtz to the petitioner corporation was that of creditor rather than stockholder. Consequently, the sums representing 6 percent upon his loans are interest and deductible by the petitioner.

The issue on the reserve for bad debts covers the period ended January 31, 1928, and the fiscal year ended January 31, 1929. The fiscal year ended January 31, 1930, is not involved under this issue, although evidence pertaining to that year was introduced.

The amounts claimed by petitioner in its returns for the periods under review, the amounts allowed by the respondent, and the amounts now claimed by petitioner as reasonable additions to the reserve for bad debts are as follows:

|  | January 31, 1928 | January 31, 1929 |
|---|---|---|
| Originally claimed | $18,421.13 | $16,961.42 |
| Allowed | 5,425.61 | 14,971.17 |
| Presently claimed | 7,891.79 | 21,776.24 |

The amounts now claimed represent 4 percent of gross sales, and the amounts allowed by respondent are 2¾ percent of gross sales.

As set out in the findings of fact, the practice of petitioner was to credit to the bad debt reserve an amount equal to the total of accounts which were delinquent for four months. Against the reserve was charged the actual bad debts. The actual bad debts for the period ended January 31, 1928, were $15,636.98 and for the fiscal year ended January 31, 1929, they were $12,812.81, a total of $28,449.79, against total additions to reserves now claimed in the amount of $29,668.03, and $20,396.78 allowed by the respondent. These figures demonstrate that the additions allowed by the respondent were insufficient to care for bad debts and also establish that the amounts now claimed by petitioner are not unreasonable additions. In our opinion the amounts now claimed by petitioner should be allowed as deductions of reasonable additions to its reserve for bad debts.

At the trial of these proceedings a question arose as to the effect of setting up an initial reserve for bad debts in the amount of $15,585.79 representing 12½ percent of the accounts receivable pur-

chased by petitioner from its predecessor. The evidence develops that the amount so credited to the reserve account has not been charged to earnings or surplus, nor has a deduction ever been claimed in respect of it in petitioner's income tax returns. Petitioner does not now claim any deduction on account of the $15,585.79 credited to the reserve at the opening of its books, but claims deductions for additions thereto in amounts representing 4 percent of its sales, which we have held above are allowable. The initial reserve does not appear to have any bearing upon the questions presented for decision.

*Decision will be entered under Rule 50.*