Idaho Lumber & Hardware Company, a corporation, v. Commissioner.
Idaho Lumber & Hardware Co. v. Commissioner
Docket No. 4792.
United States Tax Court
1945 Tax Ct. Memo LEXIS 277; 4 T.C.M. (CCH) 290; T.C.M. (RIA) 45085; March 8, 1945
*277 Petitioner issued securities, called "debenture stock", in which it acknowledged itself indebted to the holder for the repayment of the principal at a definite due date, with interest at 8 per cent, payable semi-annually, containing the option to defer interest payments for four years, if petitioner's cash position should so require, but not waiving the interest, the securities being subordinate to creditors but superior to holders of common stock, the only stock issuable under petitioner's articles of incorporation. Held, the debenture stock certificates are evidence of indebtedness and accrued interest thereon is deductible from gross income. Arthur H. Kent, Esq., 1620 Mills Tower, San Francisco, Calif., for the petitioner. E. A. Tonjes, Esq., for the respondent. VAN FOSSAN *278 Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $1,898 in the petitioner's income tax for the year 1941. The single issue is whether certain securities issued by the petitioner and denominated "debenture stock" were, in fact, stock of the petitioner or were evidences of indebtedness, giving rise to an interest deduction. Findings of Fact Certain facts were stipulated and as so stipulated are adopted as findings of fact. The portions thereof material to the issue are as follows: The petitioner is an Idaho corporation with its principal office in Pocatello, Idaho. It filed its income tax return for the year 1941 with the collector of internal revenue for the district of Idaho. Petitioner was incorporated on May 7, 1936, with a capital stock of $50,000, consisting of 500 shares of common stock of the par value of $100 each. On January 28, 1938, the petitioner's capital stock was increased to $100,000, divided into 1,000 shares of common stock of the par value of $100 each. On January 1, 1940, $70,000 of the petitioner's stock was issued and outstanding. On September 9, 1940, the directors of the petitioner passed the following motion: *279 "It was moved by R. H. Wells, seconded by Bird Finlayson, and unanimously agreed that each stockholder should surrender ninety per cent of his Capital Stock in the Company in exchange for Preferred Debenture Stock to bear interest at eight per cent per annum. Said Debenture Stock to be similar to form attached hereto and marked Exhibit A. Exhibit A DEBENTURE STOCK CERTIFICATE Date "THIS IS TO CERTIFY THAT the hereby acknowledges itself indebted to in the sum of dollars, principal payable July 1, 1965, interest at the rate of % per annum, payable semi-annually on the first days of January and July in each year. Should the cash position not justify the payment of the interest in cash the Company shall have a period of four years from the due date of the interest to make payment in cash. This certificate can be retired at any interest date by the payment of principal, plus all unpaid interest. "In the payment of their several claims, all creditors, other than the stockholders of the corporation, shall rank superior to the holders of the debenture stock, but all holders of debenture stock shall rank pari passu with each other, and superior to the stockholders of the corporation, *280 with respect to their share stock." On or about December 31, 1940, pursuant to the authorization and direction of its board of directors at the special meeting of September 9, 1940, the petitioner issued certain documents designated debenture stock certificates, in the form of "Exhibit A", as above set forth, with interest at 8 per cent, in the aggregate face amount of $63,000 to the holders of its outstanding common stock proportionately to their holdings thereof in exchange for 90 per cent of the 700 shares of the common stock of $70,000 par value then outstanding, being 630 shares of the common stock issued and outstanding. The 630 shares of common stock surrendered to the petitioner in exchange for documents designated as debenture stock were thereupon cancelled and retired by the petitioner in the manner provided in its articles of incorporation. The petitioner filed its Federal capital stock tax return for the year ending June 30, 1941, in which it declared that the value of its entire capital stock was $200,000. The return contained no reference to the "debenture stock." On its balance sheets of December 31, 1940, and December 31, 1941, the petitioner showed its "debenture *281 preferred stock" as a liability of $63,000 and its "common stock", under a separate heading, as a liability of $7,000. The transaction in which the petitioner's documents designated debenture stock in the amount of $63,000 was issued to the stockholders of the petitioner in exchange for 90 per cent of the common stock of a par value of $63,000 previously held by them, was treated by the parties to the transaction as an exchange on which no gain or loss was recognized under the applicable provisions of the Internal Revenue Code. The petitioner kept its books and prepared its returns on an accrual basis. The petitioner's books show the following entry, dated December 31, 1941: Interest expense… $5,040.00 Accounts payable… $5,040.00 The so-called interest expense accrued on the petitioner's books at December 31, 1941, relates to the so-called "debenture stock certificates issued by the petitioner on or about December 31, 1940." The record discloses the following additional facts: The stock of the petitioner was owned equally by the Wells-Finlayson group and the Bistline family group. Finlayson was in poor health and later died. R. H. Wells acquired his stock under a "cross *282 option." Some of the Bistline stock was held by Bistline, Inc. It was believed, in the event of death or liquidation, respectively, the petitioner's stock might easily have been thrown out of balance if the 700 shares remained issued, whereas the control of the corporation would be accomplished much better with only 70 shares outstanding. The petitioner is a comparatively small company, engaged in the retail lumber, hardware, and farm implement business. It did not have sufficient working capital and hence desired to create a form of security which might be used as a basis of borrowing by the stockholders for their own benefit and for the use of the petitioner. The "debenture stock" was considered to be better collateral than common or preferred stock because it was a definite obligation, bore interest and had a fixed due date. The petitioner's articles of incorporation limited its stock to common stock. The issuance of preferred stock was rejected because of the inconvenience and expense of amending the articles of incorporation, even if the petitioner's officers had thought such a procedure desirable. On March 13, 1942, the petitioner issued its checks aggregating $5,040 for *283 the interest on the debentures for the year 1941. The checks were delivered to the payees on March 13, 1942, and were presented for payment on December 10, 1942. They were endorsed to the petitioner by the payees and used as part payment for additional debentures of the petitioner, the remainder of the payments being made in cash and credits. Wells and his immediate relatives were not related by blood or marriage to any of the Bistline stockholders and had no business or fiduciary association with them or with Bistline, Inc., except as stockholders of the petitioner. In its income tax return for 1941 the petitioner claimed a deduction of $6,668.75 for interest and discount accrued. The Commissioner disallowed $5,040 of the deduction with the following explanation: "It is held that the amount of $5,040.00, claimed as a deduction for interest paid on debentures, is not an allowable deduction, under the provisions of Section 23 (b) of the Internal Revenue Code." Opinion VAN FOSSAN, Judge: The issue is whether the debenture stock certificates of the petitioner are evidences of indebtedness or of a proprietary interest in the corporation. In cases of this *284 kind it has become axiomatic that the decision rests on questions of fact and that no one factor is controlling. It is also well settled that the name given to an instrument does not determine its true character, Commissioner v. J. N. Bray Co., 126 Fed. (2d) 612; I. Unterberg & Co., Inc., 2 B.T.A. 274; cf. Kentucky River Coal Corporation, 3 B.T.A. 644; and that the intent of the issuing corporation has an important bearing on the ultimate conclusion. In the numerous cases involving this question, we have not limited our consideration to the instrument itself nor to the related corporate action, but we have viewed all of the circumstances surrounding the issuance, including the purpose and the use of the securities and their anticipated disposition. Commissioner v. Proctor Shop, Inc., 82 Fed. (2d) 792. Upon analyzing the situation of the case at bar, we find that although the directors of the petitioner, in their order of September 9, 1940, denominated the instrument under consideration "debenture stock" and the petitioner issued its certificate labeled "Debenture Stock Certificate", yet the petitioner acknowledged itself "indebted" *285 to the holder in a definite sum payable July 1, 1965, with "interest" at the rate of 8 per cent per annum, payable semi-annually. In case the petitioner's "cash position" should not justify the payment of interest, it was permitted to defer the payment for four years but the holder did not relinquish his right to payment nor was such right dependent on the earnings of the petitioner or the amount of its surplus. The certificate was retireable on any interest date by the payment of "principal", plus all unpaid "interest". See O.P.P. Holding Corporation, 30 B.T.A. 337, affirmed 76 Fed. (2d) 11. The rights of the debenture holders were subordinate to those of all creditors but were superior to those of the petitioner's stockholders "with respect to their share stock." The certificates gave the holder no share in the corporation's assets, no rights to participate in its management and no share in its net assets upon liquidation. Weighing similar evidence in other cases, this and other courts have held that such an instrument constituted a certificate of indebtedness and that the amounts paid as interest to the holders thereof were deductible from gross income. *286 Washmont v. Hendricksen, 137 Fed. (2d) 306; O.P.P. Holding Corporation, supra.
The language in the body of the instrument before us clearly shows that the petitioner intended to create an evidence of indebtedness. The words "indebted", "principal," and "interest" and the sharp distinction between the debenture holders and the stockholders holding "share stock" all definitely point to such conclusion. The further fact that the petitioner acknowledged itself indebted in a certain principal sum, due on a fixed date, and with a specified rate of interest, payable semi-annually, supports this view. See H. R. De Milt Co., 7 B.T.A. 7. Cf. Commissioner v. H. P. Hood & Sons, Inc., 141 Fed. (2d) 467. The provision relating to retirement is equivalent to the customary "on or before," option contained in notes and in no wise affects the character of the obligation. The postponement of interest payments, also at the option of the maker who must determine whether or not its cash position requires such deferment, likewise does not alter the nature of the obligation. The petitioner was not a "family corporation" but was a corporate union *287 of two separate and independent groups connected only by their business interest in the petitioner. That the business was a legitimate commercial enterprise can not be gainsaid. A corporation may replace a stock interest with an evidence of indebtedness when, in its best judgment, it deems it necessary to do so. Commissioner v. H. P. Hood & Sons, Inc., supra; Commissioner v. Proctor Shop, Inc., supra. So, here, it best served the petitioner's purpose to issue the debenture stock certificate which could be used for the petitioner's benefit and the easier convenience of its stockholders. Since it does not appear that the petitioner's "cash position" justified the postponement of payment, it was under a definite and indefeasible obligation to pay the interest during the taxable year. The amount of the interest was properly accrued on the petitioner's books. The amount of such indebtedness so accrued is deductible. Decision will be entered under Rule 50.