H. E. Fletcher Company v. Commissioner.
H. E. Fletcher Co. v. Comm'r
Docket No. 28105.
United States Tax Court
1951 Tax Ct. Memo LEXIS 57; 10 T.C.M. (CCH) 1025; T.C.M. (RIA) 51317; October 26, 1951
*57 1. Held, notes issued by a corporation in exchange for preferred stock of that corporation constituted indebtedness, and the interest paid thereon was deductible. 2. Held, attorney's fees which were paid as ordinary and necessary business expenses were deductible. 3. Held, interest paid on uncontested additional assessments of State and Federal taxes could be deducted by a corporation on the accrual basis in the year to which the tax related. Melville F. Weston, Esq., and William H. Gulliver, Jr., Esq., for the petitioner. William C. W. Haynes, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined income tax deficiencies for the years 1943 and 1944 as follows: Year
Deficiency
1943
$37,862.61
1944
3,990.56
*58 The questions in issue in this proceeding are: 1. Is petitioner entitled to deduct, as interest under section 23 (b) of the Internal Revenue Code, amounts accrued and paid upon 7 per cent promissory notes? 2. Is petitioner entitled to deduct, as ordinary and necessary business expenses under section 23 (a) (1) (A), I.R.C., the amount of attorney's fees paid in 1941? 3. Is petitioner entitled to deduct, as interest under section 23 (b), I.R.C., amounts paid in 1941 and 1942 representing interest on additional assessments of State and Federal taxes? Findings of Fact The facts stipulated are so found. The H. E. Flecher Company, the petitioner, is a Massachusetts corporation which filed its income and excess profits tax returns for the years in question with the collector of internal revenue for the district of Massachusetts. The principal business of the corporation is the quarrying and fabricating of granite. On July 1, 1941, the following stock of the petitioner corporation was outstanding: 1,763
shares, Class A, 7 per cent Cumulative
Preferred Stock, $100 par value.
1,000
shares, 7 per cent, Non-Cumulative
Preferred Stock, $100 par value.
10,852
shares, common stock, no par value.
*59 The preferred shares, as well as the common, were accorded voting rights at stockholders' meetings. In July, 1941, the Treasurer was authorized by vote of the board of directors to purchase all or any part of the Class A preferred and non-cumulative preferred stock at $100 per share, payable in cash or in notes of the corporation. The corporation, between July 14 and December 31, 1941, purchased 72 shares of Class A preferred for cash. The petitioner, during the same period, also purchased 1,690 shares of Class A preferred by issuing $169,000 of its 7 per cent promissory notes, dated July 1, 1941, due July 1, 1961. All 1,000 shares of non-cumulative preferred stock were purchased by the issuance of $100,000 of the 7 per cent notes. The notes read as follows: "Westford, Massachusetts July 1, 1941 " $ "For value received, twenty years after date, H. E. Fletcher Co. promises to pay to the order of $ with interest thereon at the rate of seven percent (7%), said interest to be payable semi-annually on the thirtieth day of June and the thirty-first day of December of each year, first payment to be upon December 31, 1941, principal and interest both to be payable at the office of *60 the Company wherever located. This note may, at the option of the maker, be renewed at its due date for an additional term of ten (10) years. Payments of principal in multiples of One Hundred Dollars ($100.00) may be anticipated on any interest date. In the event of the bankruptcy, insolvency, receivership, dissolution, or liquidation of the Company, or if it makes an assignment for the benefit of its creditors, or if the Company reorganizes voluntarily or under the bankruptcy laws or any other laws, or if an arrangement of its debts is made by order of any court, then and in that event this note shall be subject in all respects and subordinate, both as to principal and interest, to any and all notes of the Company now held by or hereafter given to any national bank, trust company, or other banking institution, and in such event no payment shall be due or payable upon this note unless and until the notes to which this note is herein subordinated are paid in full. "H. E. FLETCHER O. "By Treasurer" The purchase of the preferred stock and the issuance of the notes were ratified and confirmed by the stockholders at the annual meeting held in January, 1942. The principal holders *61 of the common stock in July, 1941, were Harold H. Fletcher, Ralph A. Fletcher, and trustees under the will of Carrie H. Fletcher. These persons, together with Herbert E. Fletcher, the founder of the corporation, were the principal holders of the preferred stock and later of the promissory notes. Herbert E. Fletcher owned approximately 48 per cent of the preferred stock but none of the common. Similar 7 per cent notes, aggregating $17,900, were issued for cash or property in 1941, 1942 and 1944. The petitioner has repurchased some of its 7 per cent promissory notes from time to time, but the principal on the notes outstanding never fell below $258,800 between 1941 and 1946. The corporation has always treated the notes as indebtedness on its books since 1941. The corporate balance sheet as of December 31, 1941, showed asset values of $1,152,295.49. Notes payable to banks aggregated $240,000, and the 7 per cent notes totaled $272,500. Earned surplus and outstanding capital stock were carried at $579,542.17. In the years 1941 to 1946 the corporation paid interest on outstanding loans at the rate of 3, 4 and 5 per cent. During World War I the corporation had competely closed down, *62 granite construction work being adversely affected by war situations. The same problems were anticipated during World War II but the corporation undertook defense work. The corporation, which is on the accrual basis of accounting, accrued and paid in each of the years from 1941 to 1946, the following amounts as interest on the 7 per cent notes and claimed the deduction of such amounts as interest in its Federal income tax returns for each of such years: 1941
$ 9,477.13
1942
19,038.22
1943
18,116.00
1944
18,816.00
1945
18,816.00
1946
18,746.00
In its income tax return for 1941 the petitioner also claimed a deduction of $5,205.25 paid in 1941 as attorney's fees for services in connection with labor matters pursuant to a bill dated and first presented April 18, 1941. The legal services were rendered in 1940 or before but some correspondence with the attorneys was carried on into 1941. The petitioner paid $67.62 in 1941 as interest on additional Federal income taxes for 1939 which was claimed as a deduction in the 1941 return. In 1942 the petitioner paid $198.61 as interest on additional Massachusetts and Federal income taxes for 1940, 1941 and 1942. These *63 interest payments were claimed as deductions in 1942. The respondent disallowed the deduction of the interest on the 7 per cent notes in the years 1941 through 1946, the attorney's fees in 1941 and the interest on taxes in 1941 and 1942. The disallowance of the legal fees and tax interest deductions in 1941 and 1942 and the disallowance of the 7 per cent interest deductions in 1941, 1942, 1945 and 1946 prevented the deduction of a net operating loss in 1943 and 1944 through the carry-over carry-back provisions. The notes issued by the corporation, exchanged for preferred stock, constituted indebtedness of the corporation and the interest accruing on them was deductible. Opinion VAN FOSSAN, Judge: The first question presented is the deductibility of the payments upon the 7 per cent notes as interest. The respondent takes the position that the instruments were shares of preferred stock masquerading as promissory notes and that the payments were not payments of interest under section 23 (b), I.R.C.[1] This issue has been presented in numerous cases which have been determined upon the facts of each particular case. The Proctor Shop, Inc., 30 B.T.A. 721, *64 affirmed, 82 Fed. (2d) 792. Among the factors to be considered in the determination are: The name given to the certificate; the presence or absence of a fixed maturity date; the intent of the parties; the source of payments; the right to enforce payment of principal and interest; the right to participate in management by voting; and status as a creditor. John Kelley Company, 1 T.C. 457, affirmed, 326 U.S. 521. Examination of the facts against the background of these criteria leads us to the conclusion that the cases cited by respondent are not controlling and that on the facts of this case the petitioner should prevail. The instruments are called notes and have been treated as such by the corporation, which was not true in Verifine Dairy Products Corporation of Sheboygan, Inc., 3 T.C. 269, cited by respondent. The certificates carried a fixed maturity date, unlike the debentures in Green Bay & Western R. Company, et al., 3 T.C. 372, *65 affirmed, 147 Fed. (2d) 585. The maturity of the notes is not conditioned upon later events and will occur in the reasonable future, which was not the case in Swoby Corporation, 9 T.C. 887. Payment of the principal and interest is not dependent upon a particular source such as earnings or profits nor is the payment of interest subject to the option of petitioner as in Charles L. Huisking & Co., Inc., 4 T.C. 595. There appears no obstacle to the enforcement by ordinary process of the right to payment of principal and interest. The petitioner enjoys no immunity from suit as found in 1432 Broadway Corporation, 4 T.C. 1158, affirmed, 60 Fed. (2d) 885. There is no voting or other right to participate in the management of the corporation given to the noteholders. The interest payments were all paid when due. All these facts tend to support the relationship of debtor and creditor, not that of stock ownership. The maturity of the notes was subject to the petitioner's option to extend the date a period of ten years. The fact that the maturity could be thus postponed is not fatal to the contention that the notes constituted debt *66 obligations of the petitioner. Commissioner v. O.P.P. Holding Corporation, 76 Fed. (2d) 11, affirming 30 B.T.A. 337. The notes were made subject to notes held by banking institutions in the event of bankruptcy, liquidation, receivership, reorganization, or similar arrangements. The contingent subordination of these notes to others does not affect their validity as evidence of indebtedness for they could be subordinated to the claims of all creditors and retain their status as debts H. R. De Milt Company, 7 B.T.A. 7; Commissioner v. O.P.P. Holding Corporation, supra.
The respondent contends that the exchange of preferred stock for notes did not change the status of the holders nor affect the control of the petitioner corporation. The fact that notes were exchanged for preferred stock does not preclude a change from a stockholder relationship to that of a creditor-debtor relationship, if the prerequisites for the change exist. Lansing Community Hotel Corp., 14 T.C. 183, affirmed, 187 Fed. (2d) 487; Commissioner v. H. P. Hood & Sons, 141 Fed. (2d) 467, affirming Memorandum Opinion of this *67 Court entered December 2, 1942 [1 TCM 262,]. In the present instance control of the corporation was affected by the exchange. Herbert E. Fletcher owned almost half of the preferred stock but held none of the common. After the exchange of preferred stock for notes Herbert E. Fletcher's voice in the management of the corporation was lost in so far as voting power is concerned. Similarly, the exchange of stock and notes altered the voting power of the common stock holders, for the voting rights of the preferred shareholders were eliminated. The respondent argues that 1941 was not a propitious year for the corporation to incur additional indebtedness. The business purpose test applied by the respondent to the issuance of these notes has not been regarded as determinative of the deductibility of interest payments. The Toledo Blade Company, 11 T.C. 1079, affirmed, 180 Fed. (2d) 357. The respondent's objection that the transaction was merely a family proceeding which changed the relationship from stockholder to creditor in name only, is not well taken. Stock may be exchanged for valid evidence of indebtedness without the lending of new money at *68 the time. New England Lime Company, 13 T.C. 799. The ownership of a closely held corporation need not be greatly affected by the exchange to constitute the creation of a debt. John Kelley Company, supra.
The respondent relies upon the rate of interest of 7 per cent being higher than the interest paid on other debts and loans as a factor in the determination. The notes in question, however, were long-term unsecured and unguaranteed debts which would require greater interest to offset the greater risk. Payment of interest at greater than market rates has no valid bearing upon the question of indebtedness. Cleveland Adolf Mayer Realty Corp., 6 T.C. 730, reversed on other grounds, 160 Fed. (2d) 1012. The respondent's objections to the deduction of interest payments on the notes are directed toward the purposes for which the exchange was made. The stockholders have a right to change to a creditor-debtor basis, however, though the reason may be purely personal to the parties. John Kelley Company, supra. The saving of taxes through this transaction may have been a prime consideration but unless tax saving is the sole *69 purpose there is nothing to prevent a taxpayer from exchanging an instrument of proprietorship for one of indebtedness. Commissioner v. H. P. Hood & Sons, supra.Upon all the facts, therefore, we conclude that the notes were evidence of true debts and the interest payments thereon deductible. The respondent concedes the deductibility of the $5,205.25 attorney's fees in 1941, under section 23 (a) (1) (A), I.R.C., [2] if the Court finds that no bill was rendered prior to 1941 and if these services were performed in 1941 or in prior years. Upon the facts presented, we conclude that the amount was paid for services rendered in prior years but the obligation to pay became fixed, final and definite in amount in 1941 when the bill was first presented. Associated Gas & Electric Company, 2 B.T.A. 263. *70 The deduction, under section 23 (b), I.R.C., of amounts paid as interest on additional State and Federal taxes in 1941 and 1942 relating to the years 1939, 1940, 1941 and 1942 must be disallowed in part. For deduction purposes taxes accrue when all events have transpired which determined the amount of the tax and the taxpayer's liability therefor. United States v. Anderson, 269 U.S. 422. This rule is also applicable to the accrual of an item of interest on taxes. H. E. Harman Coal Corporation, 16 T.C. 787. The facts necessary for the determination of the additional tax and interest thereon were fixed in the years to which they related. Accrual of the taxes and interest could not be postponed for there is no evidence that the liability was contested by the petitioner. Cf. Lehigh Valley Railroad Company, 12 T.C. 977; G.C.M. 9575, X-1, Cum. Bull. 381. The petitioner accrued as of 1941 and 1942 the entire amount of interest paid. Only so much of the interest properly attributable to those years may be deducted. Wisconsin Farmer Company, 46 B.T.A. 116. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(b) Interest. - All interest paid or accrued within the taxable year on indebtedness, * * *.↩
2. SEC.23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or business expenses. - (A) In general. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩