**COMMISSIONER OF INTERNAL REVENUE v. H. P. HOOD & SONS, Inc.**

**No. 3945.**

Circuit Court of Appeals, First Circuit.

March 22, 1944.

Maryhelen Wigle, Sp. Asst. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Helen R. Carloss, and Newton K. Fox, Sp. Assts. to the Atty. Gen., and J. P. Wenchel, Gen. Counsel, and R. F. Staubly, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for Commissioner of Internal Revenue.

H. Brian Holland and James W. Mudge, both of Boston, Mass. (Ropes, Gray, Best, Coolidge & Rugg, of Boston, Mass., of counsel), for respondent.

Before MAHONEY and WOODBURY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

The question here involved is whether amounts accrued by the taxpayer as interest payable on its "7% Income Debentures" are deductible as interest on indebtedness under § 23(b) of the Revenue Acts of 1936 and 1938,[1] or nondeductible as being in fact dividends on preferred stock. The taxes in controversy are income taxes for the fiscal year of the respondent ended February 28, 1938, in the sum of $25,089.29 and income and excess profits taxes for its fiscal year ended February 28, 1939, in the aggregate sum of $46,860.46.

The taxpayer is a Massachusetts corporation engaged in the business of distributing dairy products. The corporate books and accounts for the years in ques-

[1] 49 Stat. 1648; 52 Stat. 447, 26 U.S.C.A. Int.Rev.Code § 23(b).

tion were kept, and its tax returns made, on the accrual basis. During the taxable years in question it had outstanding certain securities designated as 7% Income Debentures due December 15, 1976. These debentures provided for the payment of a sum certain on the due date and carried 7% interest payable quarterly "only out of and to the extent of the net earnings of the Company". Interest was cumulative and payable absolutely at the date of maturity or call of the debentures irrespective of the earnings of the company. The debentures did not give the holder any right to vote or participate in the management of the company. The company reserved the right to issue "other notes, debentures, bonds or other obligations" in priority to the debentures.

Provision was made for the alteration or modification of these debentures with the written consent of the company and sixty-six and two-thirds per cent in principal amount of the debentures at the time outstanding, with the proviso that no such modification or alteration "shall affect or impair the absolute and unconditional obligation of the company in respect of the principal of or, subject to the limitations and conditions in respect of interest payments specified in this debenture, the interest on this debenture".

The debentures were authorized in December, 1936, and pursuant to a vote of the corporation were offered in exchange on a par for par basis to the holders of the taxpayer's preferred stock, about one-half of which was owned by non-executive employees of the taxpayer and farmers from whom the taxpayer purchased dairy products. During the calendar years 1936 to 1940, inclusive, 29,498 shares of preferred stock ($100 par per share) were exchanged for debentures, and debentures in the face amount of $665,800 were delivered to the holders of common stock as dividends on their stock. The taxpayer has sold for cash $60,000 face amount of the debentures and has purchased for cash mostly from retiring employees or the estates of deceased employees $296,700 face amount of debentures. No other obligations have been issued by the taxpayer since the authorization of these debentures.

The taxpayer had available earnings sufficient for the payment of the installments of quarterly interest on the debentures and these were in fact paid when due during the fiscal years in question. The amount of interest which accrued in respect of outstanding debentures during the fiscal years ended February 28, 1938 and 1939, were $172,980.24 and $223,590.05, respectively. These amounts the taxpayer deducted in its returns as interest accrued on indebtedness but the Commissioner of Internal Revenue disallowed them. The Tax Court reversed the determination by the Commissioner and held the relationship between the holders of the debentures and the taxpayer was that of debtor and creditor and not that of stock ownership.

The question resolves itself into the determination as to what is the proper characterization of the instruments. As defined in 1 Bouv. Law Dict., Rawle's Third Rev., p. 784, a debenture is "any instrument (other than a covering or trust deed) which either creates or agrees to create a debt in favor of one person or corporation or several persons or corporations, or acknowledges such a debt".

There is little difficulty in distinguishing the ordinary share of common stock, on the one hand, and the mortgage secured bond on the other. It is clear that a common stock is a proprietary interest on which dividends are paid and a bond is a debt on which interest is paid. Between the two extremes, however, there have grown divers types of securities with many overlapping characteristics. Some of these myriad variations have, no doubt, been developed to meet fundamental business needs. Others have been mere window dressing to catch the eye of the purchasing public. The result is that it is not always easy to draw the line between that type of proprietary interest known as a preferred stock and that type of corporate debt known as a debenture. Are these "7% Income Debentures" nothing more than camouflaged preferred stock or are they truly debentures? The fact that they carry no voting rights is immaterial since that is characteristic of both preferred stock and debentures. Likewise other characteristics are common to both.

While § 23(b) of the Revenue Acts of 1936 and 1938 allows a deduction for "all interest paid or accrued within the taxable year on indebtedness", the Acts do not aid us by defining "indebtedness". The Treasury Regulations, however, declare that "The term 'indebtedness' means an obligation, absolute and not contingent, to pay, on demand or within a given time, in

cash or other medium, a fixed amount. The term indebtedness does not include the obligation of a corporation on its capital stock."[2] While this Regulation was formulated with reference to § 351 of the Revenue Act of 1936, and not § 23(b), it is pertinent to the latter since the statute expressly provides that the words used in § 351 and § 23(b) shall have the same meaning.[3]

This court pointed out in Haffenreffer Brewing Co. v. Commissioner, 1 Cir., 1940, 116 F.2d 465, 468, certiorari denied 1941, 313 U.S. 567, 61 S.Ct. 942, 85 L.Ed. 1526, that the essential feature of the debtor-creditor relation is the presence of a fixed maturity date at which time the holder can demand payment whether or not there are net earnings. The vital factor in the present case is that the taxpayer bound itself to pay on a fixed and certain date the face amount of the instrument together with "all accumulated and/or accrued and unpaid interest" at the designated rate. Although the annual return on the instruments was payable "only out of and to the extent of the net earnings" that proprietary feature is subordinate to the indebtedness feature calling for payment of all accumulated unpaid interest on the due date "whether or not the available net earnings of the company are sufficient for such payment". Since a debenture could very well call for no current annual payment of interest at all and provide that cumulative annual interest be paid only at maturity, the additional feature that interest be paid annually to the extent of the available net earnings does not prevent the instrument from being a debenture. Cf. Commissioner v. O. P. P. Holding Corp., 2 Cir., 1935, 76 F.2d 11.

The Commissioner contends that the debentures were to become payable in 1976 "unless two-thirds of the debenture holders voted to extend the maturity date". This contention is based on the provision that alterations might be made in the terms of the debentures with the consent of the company and two-thirds of the debenture holders "(provided, however, that no such modification or alteration shall affect or impair the absolute and unconditional obligation of the Company in respect of the principal of or, subject to the limitations and conditions in respect of interest payments specified in this Debenture, the interest on this Debenture.)"

An extension of the maturity date would "affect" the obligation in respect of the principal and interest payments due. Thus the power to make such an extension is excepted from the right of the two-thirds to alter the provisions of the debentures. In a letter notifying the holders of preferred stock of their opportunity to exchange for the newly authorized 7% Income Debentures, the Company wrote, "Holders of Debentures have no voting power except that changes in the provisions of the Debentures (other than the provisions regarding interest rate and amount of principal which cannot be changed at all), may be made by the Company only with the consent of holders of two-thirds of the Debentures." In the oral argument before us, it was urged that this statement in the letter interprets the exception in the debenture and is binding as a contemporaneous written instrument. The Commissioner's argument is that this letter in interpreting the debenture provision fails to say that two-thirds of the debentures may not extend the maturity date. We think this contention is fully answered by an inspection of the letter. The quoted sentence was one of a series of enumerated provisions introduced by the statement: "Copies of a full statement of the terms and provisions governing the 7% Income Debentures may be had on request. A *brief summary* of the more important terms and conditions of these 7% Income Debentures is as follows" (Italics supplied). The letter thus did not purport to set forth the full extent of the exception to the powers of alteration resting in the hands of the two-thirds. We do not mean this to be an intimation that such a power in the hands of two-thirds of the debenture holders to extend the maturity date of their debentures would change their debtor-creditor relationship with the corporation. Cf. Commissioner v. O. P. P. Holding Corp., supra.

The fact that the right was reserved to issue other "notes, debentures, bonds or other obligations of the company" in priority to these debentures is not fatal to the debenture holders status as a creditor. Commissioner v. O. P. P. Holding Corp., supra; Commissioner v. Proctor Shop, Inc., 9 Cir., 1936, 82 F.2d 792; John Kelley

2 1937-2 Cum.Bull. 196. Currently in Treasury Regulations 111, Sec. 29.504-2.

3 Revenue Act of 1936, § 351(b) (4), 26 U.S.C.A. Int.Rev.Acts, page 936. "The terms used in this section shall have the same meaning as when used in Title I."

Company v. Commissioner, 1943, 1 T.C. 457.

The Tax Court found that although tax saving may have been one of the considerations it was not the sole consideration for the issue of these debentures to replace the preferred stock. At any rate, there is nothing to prevent this taxpayer from replacing an instrument which rests on one side of the line separating indebtedness from proprietorship with one which rests on the other side of the line. John Kelley Company v. Commissioner, supra. As Mr. Justice Holmes has said: "We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits." Bullen v. Wisconsin, 1916, 240 U.S. 625, 631, 36 S.Ct. 473, 474, 60 L.Ed. 830.

Since each case involving the question here presented must largely turn on its special facts and since the Tax Court applied the correct rule of law, its determination is entitled to the finality indicated by Dobson v. Helvering, Com'r of Int. Rev., 320 U.S. 489, 64 S.Ct. 239.

The decision of the Tax Court of the United States is affirmed.