CLEVELAND ADOLPH MAYER REALTY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6104. Promulgated April 16, 1946.

*Irvin N. Loeser, Esq.*, for the petitioner.
*W. W. Kerr, Esq.*, for the respondent.

## OPINION.

SMITH, *Judge*: We consider first the question as to the right of the petitioner to deduct interest paid upon its debentures outstanding during the taxable years. Section 23 of the Internal Revenue Code provides in material part as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, \* \* \*

The question presented is whether the outstanding debentures of the petitioner during the taxable years constitute indebtedness. The respondent submits that they do not.

With regard to a similar question we said in *John Kelley Co.*, 1 T. C. 457:

If the debentures have created an indebtedness the payments to the holders thereof are interest and deductible as expense, but if they are in fact capital stock the payments are dividends and not deductible.

In that case the taxpayer had issued in 1937 "20 year 8% income debentures," having a maturity date, bearing interest to be paid out of earnings and not cumulative, subordinate to the claims of all creditors, superior to the rights of stockholders, subject to certain procedure for collection in the event of designated defaults as specified in the trust agreement, and holders having no right to participate in management of the corporation. Part of the "debentures" was issued on subscription and the balance was issued in exchange for all of the taxpayer's outstanding preferred stock, which was retired. We held that the payments made to the debenture holders as interest were deductible as interest. Our decision in that case was reversed by the Circuit Court of Appeals for the Seventh Circuit, 146 Fed. (2d) 466, which was in turn reversed by the Supreme Court on January 7, 1946, 326 U. S. 521.

Whether a debenture issued by a corporation constitutes an indebtedness or whether it is a share of capital stock must be resolved upon the facts of the particular case. If the debenture holder has the rights merely of a stockholder, the issuance of the debentures does not create a debtor-creditor relationship. There is a vital distinction be-

tween a creditor relationship and a stockholder relationship. The debenture holder is entitled to look to the obligor for payment of his debt at some definite date or at some date which will become definite upon the happening of some event. A stockholder has a proprietary interest in the corporation. In no real sense is he a creditor. The property which he has paid into the corporation in return for his stock is at the risk of the business. He is not entitled to receive any return upon his investment in the absence of earnings and those earnings will be distributed to the stockholders upon vote of the board of directors. A creditor, on the other hand, has no proprietary interest. He has no voice in the management. He is entitled to receive interest upon his debt according to the terms of his debt obligation and the payment of principal of the debt at maturity.

There can be no question but that the debentures issued by the petitioner were intended to represent debt obligations by all parties concerned. They gave the owner no rights of a stockholder. They were freely transferable independent of the stock. Interest upon them was payable monthly at all events and the principal was payable at maturity.

The principal argument of the respondent that the debentures were not debt obligations is that they had no definite maturity date. One of the paragraphs of each debenture reads as follows:

The real estate owned by the Company is at the date hereof under lease to The May Department Stores Company, a New York corporation. The holder hereof and the holders of other Debentures of this issue agree that should the term of said lease be extended beyond its present expiration date (April 28, 1946 or should the same be renewed either in its present form or other form satisfactory to the Company, then and in any such event the maturity hereof shall be extended and postponed for a period equivalent to the term (or terms) of any such extension (or extensions) or renewal (or renewals).

The respondent submits that by reason of this provision of each debenture "the maturity date of the debenture herein is uncertain, which destroys its legality as evidence of indebtedness."

The maturity date stated in each debenture is May 10, 1946. At the time the debentures were issued in 1938 the petitioner's real estate was under lease to the May Department Stores Co. for a term ending April 27, 1946. The lease carried an option which permitted the tenant a renewal or extension of the lease for a period of 11 years at an increased rental, but the lease provided that "such renewal shall not provide for any further renewal term."

During the taxable years it could not be known whether the lease would be extended beyond April 27, 1946. It has been stipulated, however, that in April 1945 the tenant elected to extend the lease at an increased rental of $25,000 per annum for a period of 11 years. The exercise of this option by the tenant automatically extended the ma-

turity date of the debentures to May 10, 1957. The petitioner submits that in any event the maturity of the debentures was not beyond May 10, 1957.

We are not clear as to whether the execution of a new lease with the May Department Stores Co. as tenant might operate to postpone the maturity date of the debentures beyond May 10, 1957. But we are of the opinion that whether or not such a new lease would serve to postpone the maturity of the debentures, the fact that there might be such a postponement of the maturity date is not fatal to the petitioner's contention that these debentures constituted debt obligations of the petitioner.

In *H. R. DeMilt Co.*, 7 B. T. A. 7, debentures and common stock had been issued for the assets of an existing partnership. The debentures fixed a maturity date, but contained a provision reading:

* * * It Is Understood and Agreed that the payment of the principal of this debenture and of the other debentures of this series shall always be postponed to the prior payment in full of all other lawful debts and obligations of the Company.

We held that the debentures represented evidences of indebtedness and could not be included in invested capital.

In *O. P. P. Holding Corporation*, 30 B. T. A. 337; affd. (C. C. A., 2d Cir.), 76 Fed. (2d) 11, $250,000 of "Debenture Bonds" and $10,000 of capital stock were issued in exchange for stock having a book value on the books of its issuer of $129,785.51, but fairly entered on the taxpayer's books at $260,000. The debentures named a definite maturity date, but provided (1) that they were in all respects subordinate, both as to principal and interest, to the claims of all creditors, and (2) that the time of payment might be extended by action of two-thirds in amount of the debenture bonds outstanding. Hence, it followed that payment could not be enforced to the prejudice of creditors and to this extent the maturity time was not "certain"; and further that as to any particular bond the holder was bound to extend the maturity if other holders constituting two-thirds of the total so decided. Factually, this meant that every bond outstanding could be extended if a two-thirds combination of holders so decided. The debenture bonds were nevertheless held to constitute certificates of indebtedness and interest paid thereon was held to be a legal deduction from gross income.

In *National Grange Mutual Liability Co.*, 31 B. T. A. 666; affd. (C. C. A., 1st Cir.), 80 Fed. (2d) 316, "Guaranty Fund units" were involved, concerning which we said:

* * * The date for payment of the principal was not fixed, but could be fixed by the directors. No feature of this fund which would be absolutely foreign to a debt upon which interest accrues has been called to our attention. * * *

See also *Staked Plains Trust, Ltd.* v. *Commissioner* (C. C. A., 5th Cir.), 143 Fed. (2d) 421; *Grant G. Simmons*, 4 T. C. 478; and *Third Scottish American Trust Co., Ltd.* v. *United States*, 37 Fed. Supp. 279.

On the specific question growing out of the presence or absence of a fixed maturity date, *Helvering* v. *Richmond, F. & P. R. Co.* (C. C. A., 4th Cir.), 90 Fed. (2d) 971, held that "guaranteed dividends" on "guaranteed stock" constituted deductible "interest on outstanding indebtedness" for which income tax deduction was allowable. At page 973, the court said: "No maturity date" was "fixed upon which the investment * * * must be retired so long as the guaranteed dividends are paid." Yet, the court concluded:

The fact that the principal of the guaranteed stock is not demandable by the stockholder in the absence of default in the payment of the guaranteed dividends is not conclusive of a stock investment. In the light of the other attributes of the stock, this indicates rather a debt as to which there is a right of renewal so long as the interest is paid when due. There is nothing in the fact that the debt * * * is not payable at a fixed time which throws upon the holders thereof any of the risks with respect to the corporate enterprise which are characteristic of the position of the stockholder. * * *

We think it plain in the instant case that the maturity date of the debentures was at least the termination of the date when the May Department Stores Co. should cease to be lessee of the petitioner's real estate. The principal was payable upon that date and not upon the liquidation or dissolution of the petitioner corporation. For this reason we think that the respondent is in error in his claim that the petitioner's debentures were not debt obligations and that the interest paid on them was not deductible from petitioner's gross income for the taxable years by reason of the uncertainty of the maturity date of the debentures.

In support of his contention that the interest paid upon the debentures by the petitioner is not a legal deduction from gross income, the respondent relies principally upon *1432 Broadway Corporation*, 4 T. C. 1158, wherein we held that amounts accrued by a corporation as interest on debentures issued to its shareholders with shares at the time of incorporation were "under the circumstances" not deductible as interest. The circumstances which obtained in that case were:

(1) Interest was payable only (a) by action within the uncontrolled discretion of voting trustees of the capital stock, (b) out of "surplus income," and (c) provided that cash or liquid investments were not less than $75,000.

(2) The corporation's property had an apparent fair value of $1,200,000 and was subject to a real estate mortgage of $300,000. The voting trustees had authority to sell the property for $1,200,000. Against assets consisting of $900,000 net value of real estate plus $40,000 of cash the corporation authorized $1,500,000 of debentures

and actually issued initially $1,170,000. In other words, there the debentures actually issued represented approximately 124.5 percent of the net value of the corporation's assets; the authorized debentures were the equivalent of approximately 160 percent thereof.

(3) Debenture principal and interest were "subject and subordinate to the claims of all contract creditors" and upon liquidation nothing was due thereon "until all other contract creditors" were paid in full.

(4) Interest could be temporarily deferred or suspended "without limit of time" and might be paid either in cash or in additional debentures.

(5) No suit could be brought upon a defaulted debenture unless 75 percent in amount of the outstanding debentures were joined in such suit.

(6) The corporation's accounting was on the accrual basis and the amounts for which deduction was claimed were merely "accrued" rather than actually paid, except only as to an inconsequential amount paid in one year.

(7) Notwithstanding that "interest" was not being paid, at various times cash disbursements were actually made "to be applied pro rata in reduction of the principal of the debentures."

(8) During the years involved the corporation had substantial deficits.

(9) The voting trustees were empowered "in their discretion [to] elect to cause the corporation to distribute surplus either as dividends or as interest or principal."

Upon the above facts we reached the conclusion that the interest which had accrued upon the debentures but was unpaid was not a legal deduction from gross income. We said "these securities [debentures] are more nearly like preferred stock than indebtedness."

The facts which obtain in the instant proceeding are not comparable to those in the *1432 Broadway Corporation* case. Here the interest was payable monthly at all events. The debenture holders were in an entirely separate class from stockholders.

The respondent further points out that the circumstances of the issuance of the debentures are such as to preclude the deduction of interest paid on the debentures. He submits first that the petitioner in 1938 was not interested in borrowing capital and that if it had desired to do so it could have borrowed it on a first mortgage at a rate of 5 percent or less. He also submits that the consideration for the issuance of the debentures was the same as for the issuance of the stock, namely, the payment into the corporation of shares of stock of the old company, and that no particular amount of the contribution was allocable to the debentures separate from the stock.

We are of the opinion that these arguments have no valid bearing upon the question as to whether the petitioner's debentures constituted

indebtedness. It is immaterial that the petitioner was not interested in borrowing money at the time it issued the debentures. It surely can not be held that the shares of stock of the old company had no value. A competent appraiser of real estate was of the opinion that the fair market value of the old company's real estate at the date of organization of the petitioner was $365,000. We are satisfied that the fair market value was at least $300,000. This was much in excess of the par value of the debentures issued, namely, $210,000. The petitioner was as much bound to pay the debt called for by the debentures as it would have been if it had received $210,000 cash for them.

We are also of the opinion that there is no merit in the respondent's contention that the stockholders of the old company paid in all of their property at the risk of the petitioner; in other words, that it was a capital contribution. We think it clear from the debentures that they constituted a debt of the petitioner. Any excess of value of property paid into the corporation over $210,000 was a stockholder's contribution.

The final contention of the respondent is that the issuance of the debentures was without a business purpose. In making this contention the respondent relies upon *J. Robert Bazley*, 4 T. C. 897; affd. (C. C. A., 3d Cir.), 155 Fed. (2d) 237. The question presented in that case was whether the taxpayer received ordinary income in 1939 to the extent of the face value of bonds of J. Robert Bazley, Inc., received by him in that year. A subsidiary question was whether the transaction pursuant to which the bonds were transferred to Bazley constituted a tax-free reorganization. We held that a distribution to the taxpayer of debenture bonds, along with new common stock upon the surrender and redemption of old common stock of a corporation of which the taxpayer and his wife were virtually the sole stockholders, was not a reorganization resulting in a tax-free exchange, since there was lacking a true business purpose, and that the distribution of the bonds was essentially equivalent to the payment of a taxable dividend under section 115 (g) of the Internal Revenue Code. We have no such question before us in this proceeding. We do not have the stockholders of the petitioner corporation before us as petitioners. Our question is merely whether the debentures which were issued by the petitioner constituted indebtedness of the petitioner and whether the interest paid upon such debentures is deductible from gross income. We think that both questions require an affirmative answer.

Whether or not the reorganization of the corporation effected in years prior to the taxable year was a reorganization within the meaning of the taxing act in effect in that year has no bearing upon this question.

Finally, it should be noted that the taxing statutes permit a corporation to deduct from its gross income "all" interest which it pays during the taxable year on indebtedness. In *Old Colony R. Co.* v. *Commissioner*, 284 U. S. 552, the Court said:

> In short, we think that, in the common understanding, "interest" means what is usually called interest by those who pay and those who receive the amount so denominated in bond and coupon, and that the words of the statute permit the deduction of that sum, and do not refer to some esoteric concept derived from subtle and theoretic analysis.
>
> If there were doubt as to connotation of the term, and another meaning might be adopted, the fact of its use in a tax statute would incline the scale to the construction most favorable to the taxpayer. *Gould* v. *Gould*, 245 U. S. 151; *United States* v. *Merriam*, 263 U. S. 179; *Bowers* v. *Lighterage Co.*, 273 U. S. 346; *United States* v. *Updike*, 281 U. S. 489; *Burnet* v. *Niagara Falls B. Co.*, 282 U. S. 648.

For each of the taxable years the respondent has disallowed $4,397.94 of the $4,950 of depreciation which petitioner claimed on the building occupied by its lessee. The amount allowed by respondent in each year, $552.06, was based on the cost of the building to petitioner in 1915, $131,565.96, reduced by the depreciation "allowed or allowable" up to December 31, 1939, which he computed at $117,764.43.

Up to the close of the year 1939 petitioner computed depreciation at the rate of 3 percent on a cost basis of $165,000. Petitioner now concedes that the correct cost base is $131,565.96.

For a period of 3½ years prior to 1939 petitioner did not claim and was not allowed any depreciation deduction whatever on the building. For the taxable years 1940, 1941, and 1942 the respondent computed depreciation at the rate of 2 percent instead of 3 percent and petitioner does not contest that adjustment. However, the respondent also adjusted the cost basis by deducting depreciation for the years when none was claimed, computed at the rate of 3 percent. Petitioner concedes that respondent is correct in his determination that an adjustment must be made for depreciation for the prior years when none was taken, on authority of *Virginian Hotel Corporation* v. *Helvering*, 319 U. S. 523. Petitioner contends, however, that the depreciation "allowable" for those years should be computed at the revised rate of 2 percent rather than at the old rate of 3 percent.

The petitioner's contention on this point is in accordance with our decision in *Mutual Fertilizer Co.*, 5 T. C. 1122.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY, *J.*, concurs only in the result.

———

HILL, *J.*, dissenting: Petitioner is a closely held family corporation. It was organized to hold title to patrimonial property and to dis-

tribute the rental income therefrom. Beyond that it is not an operating corporation. It has even constituted an outside agent to perform all services in the collection of rents and to distribute the distributable portion thereof. Its only source of income is rents under a term lease arrangement.

The debentures which it issued proportionately to its stockholders are essentially preferred stock and not evidences of debt and hence confer upon the holders thereof proprietary interests in the corporate assets instead of giving them the status of creditors.

The debentures, as of the time of their issuance, have no fixed or determinable maturity date. May 10, 1946, is specified as the maturity date thereof, with the proviso, however, that should the term of the existing lease "be extended beyond its present expiration date (April 28, 1946) or should the same be renewed either in its present form or other form satisfactory to the Company; then and in such event the maturity hereof shall be extended and postponed for a period equivalent to the term (or terms) of any such extension (or extensions) or renewal (or renewals)."

From such provisions in the debentures it is evident that the debentures are to run so long as rental income shall be received from the corporate property. If, as, and when the property shall not be under lease, the debentures may be converted into common stock or redeemed with the liquidating proceeds of the corporate property. Such redemption would be of the same character and with like priority as that of preferred stock. To me, the conclusion is inescapable that no other disposition of the debentures was or is contemplated. If payment of the debentures as evidences of debt within the lifetime of the corporation were intended, a fixed and determinable maturity date would be provided for in the debenture agreement. Such agreement would also provide for an accelerated maturity in the event of defalcations.

Of course, the debentures could be redeemed by borrowing the money necessary therefor. If this should be done, common business practice dictates the necessity for a deed of trust or other pledge of assets as security, with definite maturity dates, accelerated maturity provisions for defalcations, and an agency outside the corporate officials to enforce the contract. The latter arrangement would unquestionably result in an indebtedness in distinctive contrast to that under which the retired debentures were issued. If a loan were negotiated for such purpose, a large part of petitioner's income would be paid out in interest to a person or persons other than the holders of proprietary interests in the corporate assets of petitioner. Obviously, such distribution of income would not comport with the purpose of petitioner's financial setup.

My opinion is that the petitioner's financial structure was ingeniously designed and consummated to reap all the advantages incident to a corporate entity without the offsetting burden of corporation taxes. I regret to see the stamp of approval placed on what, in my opinion, is a legalistic farce set up for the sole purpose of evading corporation income taxes by distributing its profits as deductible interest payments when in actuality such distributions are dividends.