Andersen Corporation, a Minnesota Corporation, v. Commissioner.
Andersen Corp. v. Commissioner
Docket No. 6893.
United States Tax Court
1946 Tax Ct. Memo LEXIS 186; 5 T.C.M. (CCH) 392; T.C.M. (RIA) 46116; May 23, 1946
*186 In 1937, petitioner, a Minnesota corporation, in a reorganization exchanged its stock and debentures for the stock of the predecessor corporation. On the facts it is held, that the interest paid or properly accrued in the taxable years on such debentures was deductible from gross income under section 23 (b), I.R.C.
William H. Oppenheimer, Esq., W-1781 First Nat'l Bank Bldg., Saint Paul 1, Minn., for the petitioner. Edward C. Adams, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves deficiencies in income taxes, declared value excess-profits taxes and excess-profits taxes, as follows: Declared
Income
value excess-
Excess-
Year
tax
profits tax
profits tax
1939
$12,431.47
$ 2,582.48
1940
19,694.85
2,696.41
$ 5,523.49
1941
12,328.67
4,542.58
39,454.09
1942
10,061.62
3,703.24
46,916.45
1943
7,515.64
10,310.60
40,969.82
*187 The basic question is whether the amounts accrued by petitioner upon its so-called 7% debenture bonds are deductible as interest on indebtedness within the purview of section 23 (b) of the Internal Revenue Code. The case was submitted upon a stipulation of facts, oral testimony and exhibits. The facts stipulated are so found. Others are found from the evidence. Findings of Fact Petitioner was incorporated on June 28, 1937, under the laws of the State of Minnesota, with an authorized capital stock of 10,000 shares of no par value. Its Federal tax returns for the periods involved were filed with the collector of internal revenue for the district of Minnesota at St. Paul. Petitioner kept its books of account on the accrual basis of accounting. From 1930 to date the petitioner's predecessor company and petitioner have specialized in the manufacture of complete window frame units for installation in homes and buildings of all types. Petitioner's predecessor corporation, to wit: Anderson Frame Corporation (hereinafter sometimes called "Frame"), was incorporated (under the name "Andersen Lumber Company"; changed in 1929 to Andersen Frame Company) under the *188 laws of the State of Wisconsin on August 1, 1903, and its principal office and place of business was Hudson, Wisconsin, from 1903 to 1913 when it removed to Bayport, Minnesota, where the business, at all times here material, has been conducted. Frame has filed its corporation Federal tax returns here material, i.e., for the years 1937 to 1943, both inclusive, with the collector of internal revenue for the district of Minnesota, at St. Paul. From date of incorporation through March 1, 1913, Frame had outstanding $100,000 par value common stock (1,000 shares at $100 each) which constituted its then entire stock issue. This issued and outstanding stock was thereafter increased as follows: March 1, 1913
Outstanding
$ 100,000
1922
Stock dividend - common
500,000
1926
Stock dividend - common
500,000
1935
Sold for cash at par
18,800
Total issued and outstanding June
28, 1937
$1,118,800
Prior to June 28, 1937, Frame owned all of the issued and outstanding capital stock of the following subsidiary corporations: (a) Andersen Foundry Company (hereinafter sometimes called "Foundry"); (b) Home Builders Finance Company (hereinafter sometimes called *189 "Finance"); and (c) Bayport Home Company (hereinafter sometimes called "Home"). All Federal tax returns here material for (a) Foundry, for the years 1937 to 1943, both inclusive, (b) Finance, for the years 1937 and 1938 (to date of dissolution, September 20, 1938) and (c) Home, for the years 1937 to 1943, both inclusive, have been filed with the collector of internal revenue for the district of Minnesota, at St. Paul. On July 6, 1937, the stockholders of Frame, who became the stockholders of petitioner with the same proportionate interests, pursuant to a plan of reorganization, adopted a resolution to transfer substantially all of its assets, excepting certain realty and cash, to the petitioner in exchange for 5,594 shares of the capital stock and $1,118,800 par or face value 7% debenture bonds of petitioner and the assumption by the latter of the liabilities of Frame. The resolution, in part, reads as follows: WHEREAS pursuant to a plan of reorganization this corporation has offered to transfer substantially all of its assets, subject to liabilities, to Andersen Corporation, a Minnesota Corporation for - 5,594 shares of common capital stock of said Andersen Corporation; *190 One Million, One Hundred and Eighteen Thousand Eight Hundred Dollars ($1,118,800) par or face value 7% Debenture Bonds of Andersen Corporation, said bonds to be dated July 6, 1937 and mature January 1, 1962; NOW, THEREFORE, BE IT RESOLVED, that upon consummation of said plan of reorganization this corporation - (a) exchange said common stock and Debenture Bonds of Andersen Corporation for the outstanding capital stock of this corporation on the following basis, namely: for each share of capital stock of this corporation each stockholder shall receive - One Hundred Dollars ( $100) face or par value of said debenture bonds of the Andersen Corporation. One-half (1/2) share of common capital stock of the Andersen Corporation, fractional amounts to be apportioned on the same basis. (b) Said capital stock of this corporation so acquired by it shall, until further action, be placed in the treasury of the corporation as treasury stock. (c) Sell five shares of the capital stock of this corporation so acquired by it to Fred C. Andersen for all the stockholders of this corporation of record of this date for the sum of Twenty-five Dollars per share and five shares of said stock *191 so acquired by it to Andersen Corporation for the sum of Twenty-five Dollars per share. On July 6, 1937, the incorporators of petitioner adopted a resolution accepting the offer of Frame and authorizing the issuance of the shares of stock and debenture bonds. This resolution contained the written indenture pursuant to which the bonds were to be issued and provided for its execution. On the same date the board of directors, by resolution, ratified, confirmed and approved the action taken by the incorporators. The debenture bonds issued pursuant to such indenture were in the following form: NO. $ STATE OF MINNESOTA ANDERSEN CORPORATION 7% Debenture Bond Series A. ANDERSEN CORPORATION (hereinafter called the "Company") a corporation of the State of Minnesota, for value received hereby promises to pay to on January 1, 1962, unless before that date this debenture bond shall have been called for redemption and payment duly provided therefor $1,800.00 in any coin or currency of the United States of America which at the time of payment is legal tender for public and private debts at the office of Andersen Corporation in the City of Bayport, Minnesota, and to pay interest thereon *192 from July 6, 1937, in like coin or currency, at the rate of seven per cent (7%) per annum payable annually on the 1st day of December and the 1st day of June in each year until the principal of this debenture bond is paid. This debenture bond is one of an authorized issue of debenture bonds of the Company known as its 7% Debenture Bonds, Series A of an aggregate principal amount not exceeding One Million, One Hundred Eighteen Thousand Eight Hundred Dollars ($1,118,800) at any one time outstanding, all of like tenor and date, but of different denominations, and all equally entitled to the benefits of an Indenture dated July 6, 1937, made by and between the Company and First National Bank of Stillwater, Minnesota, as Trustee. The authorized issue of debenture bonds, of which this bond is one shall be subordinate in payment of principal and interest to all other indebtedness of the corporation, that is to say, that any indebtedness of the Company existing on or created after July 6, 1937 shall be payable as and when such indebtedness shall mature out of assets of the Company including its current assets before the payment therefrom of the principal of or interest upon said debenture *193 bonds or any of them, including this bond. Such debenture bonds are subject to redemption in whole or in part at the option of the Company at any time, thirty (30) days' prior notice having been given as prescribed in said Indenture by registered mail to the registered holders thereof and upon payment of the redemption price thereof, viz., the principal amount thereof and accrued interest to the date fixed for redemption. If any event of default, as defined in said Indenture, shall occur, the principal of this debenture bond may be declared or become due and payable in the manner and with the effect provided in said Indenture. No transfer hereof shall be valid unless made at the office of the Trustee by the registered owner or by his duly authorized attorney and similarly noted hereon. No recourse shall be had for the payment of the principal of or interest on this debenture bond or any part thereof, or for the satisfaction of any liability or any claim arising from, founded upon or existing by reason of, the issuance, purchase hereof, or otherwise in respect hereof, or of the Indenture, against any incorporator, or any past, present or future stockholders, officer or director, *194 as such, of the Company, or of any successor corporation, either directly or through the Company or any successor corporation, or otherwise, by virtue of any contract, constitution, statute or rule of law or by the enforcement of any assessment or otherwise, all such liability of incorporators, stockholders, directors and officers being released by the registered owner hereof by the acceptance of this debenture bond and being also waived and released by the terms of the Indenture. This debenture bond shall not be valid nor become obligatory for any purpose until it shall have been authenticated by endorsement hereon of the certificate of the Trustee under the Indenture; but the Company certifies that this debenture bond upon said authentication shall be and is its valid legal and binding obligation and that all things necessary to make it such have been done and performed. IN WITNESS WHEREOF, ANDERSEN CORPORATION has caused its corporate seal to be affixed hereto, attested by its Secretary, and these presents signed in its name by its President or a Vice President, as of the 6th day of July, 1937. ANDERSEN CORPORATION, (signed) Fred C. Andersen President. Attest: (signed) R. *195 H. Sakrison Secretary. (Corporate Seal) On April 23, 1938, petitioner's board of directors adopted a resolution authorizing its president and secretary to execute and deliver to the First National Bank of Stillwater, Minnesota, as trustee for the holders of said debenture bonds, as a supplemental indenture, a mortgage on certain described realty owned by petitioner, as further security for the payment of sums evidenced by the debenture bonds, both principal and interest. On the same date petitioner caused to be executed a "Supplemental Indenture Or Mortgage" pursuant to such resolution. Petitioner, from its corporate funds, paid a registration tax in the amount of $2,797 to the State of Minnesota. The reason for the execution of the "Supplemental Indenture Or Mortgage", as orally stipulated into the record, is as follows: * * * Under the statutes of the State of Minnesota, indebtednesses that are not secured by a mortgage were at that time subject to a three mill tax under what we call our moneys and credits tax law. At the same time, if the notes were secured by a mortgage upon real estate, the corporation was given the option of paying in lieu of the moneys and credits tax, *196 a mortgage registration tax, and if the mortgage registration tax was paid then the bonds are not subject, in the hands of the bondholders, to a moneys and credits tax. If the mortgage registration tax was not paid, the bonds were subject to a moneys and credits tax, and it was for that reason that the real estate was included as a part of the security back of these debenture bonds * * *. On January 3, 1939, a resolution was adopted authorizing an agreement with the First National Bank of Stillwater, as trustee, to change the time for interest payments on the debenture bonds to quarterly on the 1st of March, June, September, and December instead of Semiannually on the 1st of June and December. The modification was to become effective when 50 per cent or more in principal amount of the debenture holders consented to such modification. The debenture bonds were originally issued in temporary form. Of the total face amount of $1,118,800, five members of the Andersen family received $1,087,700. The balance of $31,100 was issued to executives and key employees of petitioner. At the time of the reorganization the members of the Andersen family owned 5,438 1/2 shares of petitioner's *197 outstanding 5,594 shares, or 97.2 per cent. As of December 31, 1943, certain key employees, not related to the Andersen family, had acquired an additional 1,155 shares, so that on December 31, 1943, the Andersen family held 81.2 per cent and the non-related key employees, 18.8 per cent of the common stock of petitioner. As of the date of reorganization the book value of the common stock of Frame was $96.77-2/10 per share. After the reorganization the book value of the common stock of petitioner was $41.68. Certain fixed assets of Frame, i.e., factory and office buildings, machinery and equipment, and furniture and fixtures were appreciated on petitioner's books of account at the date of incorporation to the extent of $267,000. All other assets were taken on to petitioner's books at the figure at which they had theretofore been carried on the books of Frame. As of August 31, 1937, the journal of petitioner shows an accrual of interest on the debenture bonds in the sum of $11,747.40 and on September 30, 1937, and on the last day of each month thereafter throughout all the years involved therein, there appears on the journal of petitioner an item showing accrual of interest in the *198 sum of $6,526.33. Petitioner's books show payments to the holders of the interest on the debenture bonds as and when the same became due throughout the taxable years involved. Petitioner has at all times shown the debenture bonds as a debt or liability on its books, separate and apart from its capital stock and surplus. In all of its tax returns petitioner has shown the debenture bonds as an indebtedness and computed its tax liability on the basis of such debenture bonds evidencing an indebtedness and the interest deductible in determining its net taxable income. The president of petitioner testified that the purposes underlying the reorganization were: (a) To incorporate under the laws of the State of Minnesota and thereby eliminate the making of certain reports to the State of Wisconsin. (b) To change the name so as to eliminate the word "Frame", since its business was no longer limited to the manufacture of frames. (c) To improve the future position of the corporation in regard to Federal taxes. (d) To permit executives and key employees, not related to the Andersen family, to acquire a larger proportionate share of the common stock and interest in the equity of the *199 corporation. The respondent disallowed as deductions, in the taxable years, the amounts claimed as interest paid upon the 7% debenture bonds. In his notice of deficiency, respondent, in computing the surtax on undistributed profits for the year 1939, increased the dividendspaid credit, claimed on the return of petitioner, by the amount of $78,316, which is the amount petitioner claimed in that year as an interest deduction. Opinion The issue is the proper characterization for present purposes of the payments in question. If, as petitioner contends, they are "interest" payments, they are deductible under section 23 (b) of the Internal Revenue Code. [1] If they are "dividend" payments they are not deductible in computing corporate net income. Kelley Co. et al. v. Commissioner, 326 U.S. 521, (decided January 7, 1946). The respondent contends that the reorganization plan of 1937, under which the so-called debentures were issued, was a cleverly devised scheme to benefit the Andersen family, holding approximately 97 per cent of the petitioner's stock. He further argues that no business purpose of the corporation was served and the transaction is utterly *200 lacking in substance. Gregory v. Helvering, 293 U.S. 465; Helvering v. Horst, 311 U.S. 112; Higgins v. Smith, 308 U.S. 473. Continuing his argument, he says the very purpose of the formalistic series of transactions was the mere assignment of corporate income to the shareholders without first including it in corporate income; that in exchange for a corporate tax saving of $44,000, petitioner is required to disburse $78,000; that all the purposes for the reorganization, except reduction in corporate taxes, could have been accomplished by issuing "preferred shares". He thereupon concludes that the payments denominated as interest were in fact "dividends". *201 We find no evidence that the transaction was a sham. Nor is it important whether a business purpose was served by the 1937 reorganization. The question is whether the debentures issued in that reorganization constituted indebtedness of the petitioner and the amounts paid as "interest" thereon, thus deductible from gross income. In the case of Cleveland Adolph Mayer Realty Corp., 6 T.C. 730, (promulgated April 16, 1946), where a similar question was presented and the same argument by respondent was urged, we said: Whether or not the reorganization of the corporation effected in years prior to the taxable year was a reorganization within the meaning of the taxing act in effect in that year has no bearing upon this question. The instruments giving rise to the dispute possess the following indicia of indebtedness: a definite maturity date; a fixed rate of interest payable at definite periods regardless of corporate earnings; they were separately alienable; they were issued under a written indenture containing proper safeguards in case of default; they were redeemable upon 30 days' notice and the payment of the principal amount and accrued interest; they were subordinate *202 to any existing indebtedness, but protected against future indebtedness, except as to certain limited obligations specifically provided for; and they were further secured by a first mortgage on certain real estate owned by petitioner. We perceive no justification for inferring that corporate instruments possessing such attributes are in reality certificates of "preferred" stock. The so-called debentures are in form and substance obligations of indebtedness and not risk investments. Hence, the payments made by petitioner, in the taxable years involved, in accordance with their terms, were interest on indebtedness and are deductible under section 23 (b) of the Code. Effect will be given to the stipulation in connection with respondent's allowance of a dividends-paid credit in computing the surtax on undistributed profits in the taxable year 1939. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(b) Interest. - All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this chapter.↩