THE TOLEDO BLADE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12827. Promulgated December 23, 1948.

*Ferdinand Tannenbaum, Esq.*, and *Z. N. Diamond, Esq.*, for the petitioner.

*Lawrence R. Bloomenthal, Esq.*, for the respondent.

1080

**OPINION.**

LeMire, *Judge*: As to the interest deductions, the respondent takes the position that the so-called debentures issued by the petitioner in the recapitalization did not evidence a valid indebtedness of the petitioner, but were in actuality certificates of preferred stock; and that consequently the alleged interest payments thereon were not interest payments, but were dividend distributions. He submits in his brief that "the whole transaction was a sham so that the Tax Court is not now called upon to interpret the *Bazley* and *Adams* decisions in relation to this case."

In the cases referred to by the respondent, *Bazley* v. *Commissioner* and *Adams* v. *Commissioner*, 331 U. S. 737, the Supreme Court held that the issuance of new shares of stock and debentures in exchange for old shares constituted taxable distributions and not tax-free reorganizations. That is not the question before us here.

The facts, we think, do not support the respondent's contention that the transaction by which the petitioner's debentures were issued was a "sham." Whatever may be said of the reasons underlying the transaction, there can be no question but that the debentures themselves were genuine and evidenced legal obligations of the petitioner. Under their terms, the debentures were absolute as to the payment of both principal and interest. Had they been issued to a nonproprietary purchaser for value there could have been no question as to their genuineness. The fact that they were issued to the petitioner's sole

stockholder in exchange for a portion of the interest represented by its stockholdings in the petitioner does not affect their validity. That factor was present in *John Kelley Co.*, 1 T. C. 457; affd., 326 U. S. 521, reversing *Commissioner* v. *Kelley Co.*, 146 Fed. (2d) 466; *O. P. P. Holding Corporation*, 30 B. T. A. 337; affd., 76 Fed. (2d) 11, and *Cleveland Adolph Mayer Realty Corporation*, 6 T. C. 730; affirmed in part and reversed in part, 160 Fed. (2d) 1012. In all of those cases the interest payments on the debentures were held deductible by the issuing corporations.

In *1432 Broadway Corporation*, 4 T. C. 1158, and *Swoby Corporation*, 9 T. C. 887, the interest deductions were disallowed because the interest was payable conditionally, out of earnings or at the pleasure of the debtor. Here both principal and interest on the debentures were payable in all events and at definite times.

While the evidence indicates that the issuance of the debentures may not have served any business purpose of the petitioner, the respondent recognizes in his brief that the business purpose test, as applied to the issuance of debentures, has not been regarded by this Court as determinative of the question of the deductibility of the interest payments.

We said in *John Kelley Co.*, *supra*, that "stockholders have the right to change to the creditor-debtor basis, though the reason may be purely personal to the parties concerned." Citing *Commissioner* v. *Proctor Shop, Inc.*, 82 Fed. (2d) 792, affirming 30 B. T. A. 721.

On the facts here we think that this case follows the pattern of the *John Kelley Co.* and the *Cleveland Adolph Mayer Realty Corporation* cases and we hold accordingly that the petitioner is entitled to the deductions claimed for interest paid on the debentures in the taxable years.

We think the respondent correctly disallowed the amortization deductions claimed by the petitioner in each of the taxable years on account of the $780,000 payment to the Toledo Newspaper Co. under the contract of August 1, 1938.

The respondent's position is that under this contract the petitioner acquired the business and good will of the Toledo Newspaper Co., including that company's agreement not to compete for a period of ten years, in a single transaction for the lump sum of $880,000, and that this did not result in petitioner's acquisition of any property subject to amortization or depreciation.

This identical contract was under consideration by this Court in a proceeding brought by the Toledo Newspaper Co., reported at 2 T. C. 794. The question there under consideration was the gain on the transaction to the Toledo Newspaper Co. That company was contending, contrary to the petitioner's contentions here, that the contract

was not divisible as between the intangible assets and the restrictive covenant; that it evidenced a sale of the business as a single transaction; and that the seller's gain or loss was to be computed by comparing the total consideration of $880,000 against the statutory bases of such intangible assets. The Commissioner had determined, and was contending before this Court, that the $780,000 was received as compensation for the covenant not to compete and was, therefore, taxable in its entirety as ordinary income.

On the evidence in this case we reach the same conclusion that we reached in the earlier case as to the nature of the contract, that it was not divisible, but that the total consideration of $880,000 was the price which the petitioner paid for the going business and intangible assets, including the good will and the covenant not to compete. We pointed out in our opinion in *Toledo Newspaper Co.*, *supra*, that:

No deduction for depreciation, including obsolescence, is allowable to a taxpayer in respect of good will. See art. 23 (1) (3), Regulations 101. Likewise, it has been held that a newspaper subscription list, because it has no definite life, is not subject to depreciation or obsolescence allowances. *Danville Press, Inc.*, 1 B. T. A. 1171. See also *Meredith Publishing Co. v. Commissioner*, 64 Fed. (2d) 890. Therefore, the March 1, 1913, value of petitioner's intangibles, including good will, which were sold in the contract of August 1, 1938, does not have to be adjusted for depreciation or obsolescence, if any, occuring between March 1, 1913, and the date of sale, for no deductions with respect thereto were allowable to Toledo in the computation of its net income during such period.

On the evidence in the instant case we can not find that any of the assets which the petitioner acquired under the contract in question had a definite cost which the petitioner is entitled to recover through amortization or depreciation deductions.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

MURDOCK, *J.*, dissenting: The general scheme of Federal income taxation has always been to allow a taxpayer to recover through deductions the cost of assets used in its business before taxing the excess as income. *United States* v. *Ludey*, 274 U. S. 295. The principle has not been applied to good will, subscription lists, and some other assets, either because such assets are not actually exhausted through use in the business or because of the practical impossibility of telling when and to what extent they become exhausted in use. *Danville Press, Inc.*, 1 B. T. A. 1171; *Meredith Publishing Co.* v. *Commissioner*, 64 Fed. (2d) 890. Those cases are the exceptions in which some distortion of income can not be avoided. However, it has been held uniformly that the cost of a contract not to compete for a stated period may be recovered under section 23 (1) through deductions for exhaustion spread over the period. *William Ziegler, Jr.*, 1 B. T. A. 186; *Christensen*

*Machine Co.*, 18 B. T. A. 256; *Christensen Machine Co.* v. *United States*, 50 Fed. (2d) 282; *News Leader Co.*, 18 B. T. A. 1212. It was held in the latter case that the amount paid to a competing newspaper for an agreement that it would discontinue its paper for five years was recoverable through deductions for exhaustion spread ratably over the five years even though the agreement not to compete was necessarily closely associated with the good will of the discontinued paper. The Commissioner acquiesced in that case. IX–2 C. B. 44.

The agreement on the part of the Toledo Newspaper Co. and the E. W. Scripps Co., which owned a majority of its stock, to refrain from publishing a newspaper in the Toledo district for a period of 10 years was obviously valuable to the petitioner. The petitioner paid a substantial portion of the total of $880,000 for that agreement. The parties to the agreement specified therein that $780,000 of the total was paid for that agreement. Thus, there is evidence before this Court of the cost of the agreement not to compete. The respondent offered no evidence to show that the cost of that agreement was less than $780,000. Perhaps other provisions of the contract itself might lead a fact finder to conclude that the true cost was something less than $780,000. But however that may be, something was paid for that agreement and it is incumbent upon this Court to determine what portion of the total consideration may properly be regarded as the cost of the agreement not to compete for the purpose of allowing deductions under section 23 (1). *Cohan* v. *Commissioner*, 39 Fed. (2d) 540; *Helvering* v. *Taylor*, 293 U. S. 507; *Durkee* v. *Commissioner*, 162 Fed. (2d) 184. Judge Learned Hand said in *Commissioner* v. *Maresi*, 156 Fed. (2d) 929: "The one sure way to do injustice in such cases is to allow nothing whatever upon the excuse that we cannot tell how much to allow." That comment is apposite here, where the majority opinion allows no deduction for the exhaustion of this contract not to compete, which contract obviously cost the petitioner a substantial amount of money.

ARUNDELL, VAN FOSSAN, and HARRON, *JJ.*, agree with this dissent.