OPINION. Black, Judge: The issue which we have to decide in the instant case is whether the amount accrued upon petitioner’s books as interest on its debenture bonds was interest upon indebtedness so as to be deductible under the provisions of section 23 (b) of the Internal Bevenue Code.[1] The applicable regulation is printed in the margin.[2] It is well settled under the decisions of the courts that the determination of whether a particular instrument represents an indebtedness within the meaning of section 23 (b) or is preferred stock must be determined after consideration of all relevant facts. See our discussion in Cleveland Adolph Mayer Realty Corporation, 6 T. C. 730 (reversed on another point, 160 F. 2d 1012) where we said: Whether a debenture issued by a corporation constitutes an indebtedness or whether it is a share of capital stock must be resolved upon the facts of the particular case. If the debenture holder has the rights merely of a stockholder, the issuance of the debentures does not create a debtor-creditor relationship. There is a vital distinction between a creditor relationship and a stockholder relationship. The debenture holder is entitled to look to the obligor for payment of his debt at some definite date or at some date which will become definite upon the happening of some event. A stockholder has a proprietary interest in the corporation. In no real sense is he a creditor. The property which he has paid into the corporation in return for his stock is at the risk of the business. He is not entitled to receive any return upon his investment in the absence of earnings and those earnings will be distributed to the stockholders upon vote of the board of directors. A creditor, on the other hand, has no proprietary interest He has no voice in the management, tie is entitled to receive interest upon his debt according to the terms of his debt obligation and the payment of principal of the debt at maturity. The facts which have been considered material in determining that securities represent an indebtedness in other cases which have been before the Tax Court may be summarized thus: that there was a good business reason for the issuance of debt securities, that the securities have a fixed maturity date at which time the principal becomes payable in all events, that reasonable interest is payable in all events without regard to earnings, that the holders of the securities may enforce payment in the event of default, that the securities have no voting rights, that the security is called a bond and is reflected on the books and financial statements as an indebtedness, that there is a substantial investment in stock, and that the ratio of the debt securities to stock is reasonable. The facts in the instant case, we think, show that the gold debenture bonds issued by petitioner represent an indebtedness under the foregoing tests so that the interest which petitioner accrued on its books and claimed as a deduction on its return for the taxable year 1944 is allowable. What were the business reasons which prompted the organization of petitioner July 31,1929, and its acquiring in August 1929, two parcels of real estate in New York City and the issuance in payment thereof of 6,000 shares of stock of the par value of $100 a share and $2,100,000 gol d deben ture bonds ? The business reasons as shown in our Findings of Fact may be stated thus: Some time prior to 1929, a parcel of real property known as 1615-23 Broadway, New York City, and a parcel of real property in Eiverdale, New York, had been owned in undivided interests by six trusts and two individuals. Due to this division in the ownership of the properties difficulty had been encountered in managing them, particularly in view of the fact that negotiations were then being carried on with the tenants of 1615-23 Broadway for a modification of the lease covering such property. It was decided that it would be desirable for all owners of undivided interests in such properties to transfer them to a corporation so as to achieve unity of title and ease of management. The trusts instituted a proceeding in the New York Supreme Court pursuant to the provisions of section 116 of the New York Beal Property Law for the purpose of securing a decree which would authorize them to transfer their undivided interests in the properties to a corporation. The New York Supreme Court thereafter duly entered its decree authorizing the trusts to transfer their undivided interests in the properties to petitioner in exchange for the issuance by it of a proportionate share of its stock and debenture bonds to the trusts. The two properties transferred to petitioner had a fair market value of at least $2,700,000 at the date of transfer. Petitioner, in exchange for the transfer to it of such properties, issued $2,100,000 face amount of debenture bonds and 6,000 shares of capital stock each of the par value of $100. Accordingly, full value was paid in to petitioner for the debentures and the stock. Such an equity investment of $600,000 in petitioner clearly was substantial and represented the proprietary interest in the corporation. The ratio of debt to equity investment was only 314 to 1, whether taken on the basis of face and par value or on the basis of actual value. In view of the substantial equity investment in petitioner and a ratio of debt to equity investment of only 3y2 to 1, the situation is as favorable to petitioner as that involved in Kelley v. Commissioner, 326 U. S. 521, where the ratio of debt to stock was 4 to 1. There the Court said at page 526, “as material amounts of capital were invested in stock we need not consider the effect of extreme situations such as nominal stock investments and an obviously excessive debt structure.” At the time of petitioner’s organization in July 1929 at a time when real estate values in New York City were high and steadily advancing, it was anticipated by its organizers and stockholders that the earning power of the properties transferred to it would amply cover the interest upon petitioner’s debenture bonds and would leave a substantial amount available for expenses, reserves, and dividends. Subsequent events, however, revealed that this anticipation was not well founded. The great depression came on and real estate in New York City, as well as elsewhere, declined greatly in value. Due to the decline in value of its real estate, petitioner was not able to collect the amount of rents which had been anticipated and petitioner had to make adjustments with its lessee to lower rental rates. The stipulated facts show that from 1937 through 1944, the year which we have before us, petitioner collected gross rentals of $99,000 per annum and has actually paid as interest on its debentures $93,300 annually, except 1937 and 1938 when the payments were $97,500 and $95,400, respectively. This latter discrepancy is not explained in the stipulation of facts but so far as we can see it is of no importance to a decision of the issue which we have here to decide. While it is true that petitioner’s expectations which it held in 1929 as to the rentals it would be able to obtain from its properties did not materialize, there can be no question but that the facts show that these expectations were entertained in good faith. We feel perfectly sure from the facts which have been stipulated and from the oral testimony that when petitioner was organized and it issued 6,000 shares of common stock with a par value of $100 per share and $2,100,000 face value of debentures in payment of the real estate which it acquired from the then owners, it fully expected to be able to pay the interest on its debentures and to have have something substantial left over for distribution to its stockholders as dividends on its common stock. Therefore, the fact that events which happened after the widespread depression made it impossible for petitioner to collect the rents which it had anticipated does not throw any shadow on the bona fides of its stock and debenture issues. The 6,000 shares of capital stock issued by petitioner represented an investment of $600,000, which, based upon the estimates of petitioner’s future net rents, would have substantial earning power. The debenture bonds had no voting power but such voting power was vested solely in the stock which thus represented the proprietary interest in petitioner. The absence of voting power is persuasive evidence that the debenture bonds represented indebtedness. Clyde Bacon, Inc., 4 T. C. 1107. Petitioner’s debenture bonds were freely transferable without regard to the stock. Petitioner’s debenture bonds have a specific maturity date at which time the principal becomes payable in all events unless prior thereto they have been redeemed. A fixed maturity date upon which the principal becomes payable-in all events has been considered an important element in determining that a security represents an indebtedness. Commissioner v. O. P. P. Holding Corporation, 76 F. 2d 11, affirming 30 B. T. A. 337; Commissioner v. Hood & Sons, 141 F. 2d 467. Under the terms of the debenture bonds they mature on May 1, 2019, or in something over 89 years after their issuance and 4 years after the expiration of the lease covering petitioner’s principal asset, 1615-23 Broadway. In view of the val-hable building which the sublessee agreed to erect and which it did actually erect and the substantial rents which it agreed to pay to petitioner’s tenants, the performance by petitioner’s tenants of their covenants over the term of the lease seemed well assured. It, therefore, seems logical and not unusual that the debentures should not be payable (except by being called for redemption) prior to the termination of the lease on 1615-23 Broadway. When all relevant and pertinent facts are considered we think petitioner has borne its burden of proof of showing that its debenture bonds represented bona fide indebtedness and were not, as respondent contends, in effect preferred stock. The Commissioner in arguing that the $96,400 in question did not represent interest and was, therefore, not deductible relies heavily upon our decision in 1432 Broadway Corporation, 4 T. C. 1158, affd. 160 F. 2d 885. We have examined that case carefully and we think it is clearly distinguishable on its facts. We think the instant case is governed in principle by our decision in Cleveland Adolph Mayer Realty Corporation, supra. In that case we pointed out at page 739 that the Commissioner was principally relying upon 1432 Broadway Corporation, supra, but we gave reasons as to why we thought 11¡3% Broadway Corporation was clearly distinguishable on its facts from those present in Cleveland Adolph Mayer Realty Corporation, supra. After pointing out these distinguishing facts we went on to hold “We think it clear from the debentures that they constituted a debt of the petitioner.” We make the same holding in the instant case. Substantially the same reasons for distinguishing Cleveland Adolph Mayer Realty Corporation from 1432 Broadway Corporation exist in the instant case. We, therefore, follow Cleveland Adolph Mayer Realty Corporation rather than 11$2 Broadway Corporation. Decision will he entered for the petitioner. SEC. 23. deductions PROM GROSS INCOME. In computing net income there shall be allowed as deductions : * * $ * , * • (b) Interest. — All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this chapter. REGULATIONS 111. Sec. 29.23 (b)-l. Interest. — Interest paid or accrued within the year on indebtedness may be deducted from gross income, except that interest on indebtedness incurred or continued to purchase or carry obligations, * * * the interest upon which is wholly exempt from tar, is not deductible. 8 ® * [[Image here]] * * '* So-called interest on preferred stock, which is in reality a dividend thereon, cannot be deducted in computing net income. * * *