**SEABOARD REALTY, Inc., v. DISTRICT OF COLUMBIA.**

No. 10094.

United States Court of Appeals District of Columbia Circuit.

Argued March 17, 1950.

Reargued June 1, 1950.

Decided July 24, 1950.

Mr. George A. Cassidy, Jr., Washington, D. C., with whom Mr. Frederick Stohlman, Washington, D. C., was on the brief, for petitioner.

Mr. Harry L. Walker, Assistant Corporation Counsel, D. C., with whom Mr. Vernon E. West, Corporation Counsel, D. C., and Mr. Chester H. Gray, Principal Assistant Corporation Counsel, D. C., were on the brief, for respondent.

Before PRETTYMAN, BAZELON and FAHY, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals for the District of Columbia in an income tax case. Petitioner is a corporation. The question is whether certain payments, or distributions, by the corporation were or were not interest within the meaning of the local revenue act and thus deductible from gross income in computing net income for tax purposes.[1]

1. 53 Stat. 1089 (1939), D.C.Code § 47—1505(a) (2) (1940).

Prior to December, 1942, one Ernest L. Smith owned 998 of 1,000 outstanding shares of the common stock of a Delaware corporation, and his wife and his attorney each owned one share. The assets of the corporation totaled $227,159.15 as of December 31, 1942, represented by cash, depreciated buildings, and land. On the liabilities side of its balance sheet appeared accounts payable, a mortgage, common stock of $1,000, and an earned surplus of $72,-309.46. The company was advised that the presence of this comparatively large surplus, undistributed, would tend to make it liable to the federal tax under Section 102 of the Internal Revenue Code, 26 U.S.C.A. § 102. A new Delaware corporation, which is the petitioner here, was organized and was duly authorized to issue $150,000 in 5 per cent debentures. The old corporation transferred all its assets and liabilities to the new in exchange for the common stock and debentures of the latter, and then transferred that stock and the debentures to its stockholders in exchange for all its own outstanding stock. So, whereas Smith, his wife, and his attorney theretofore had shares of stock in the old corporation, thereafter they had both stock and debentures in the new corporation. The question in the case is the deductibility of the interest on these debentures.

The balance sheet of the new corporation showed on the assets side cash, depreciated buildings, and land, all in the same amounts as those items appeared on the old balance sheet, and a new item entitled "Excess Market Value of Assets" in the amount of $77,690.54. On the liabilities side, this balance sheet showed accounts payable, the mortgage, and the common stock, in the same amounts as those items appeared on the old balance sheet, and a further liability for "Debenture Bearer Bonds" in the sum of $150,000. This balance sheet showed no surplus.

The effect of the foregoing transactions, from the standpoint of the corporation, was to wipe out the surplus and the unstated increment in the market value of the assets as equity liabilities and to substitute therefor a stated debt obligation. The effect, from Smith's standpoint (and that of his wife and his attorney) was to place in his hands an evidence of debt representing values which had theretofore been his as part of the equity represented by his stock.

The debentures had many, if not all, of the characteristics usually mentioned as descriptive of debt obligations.[2] They were called "debentures", had a fixed maturity date, and bore an unqualified obligation to pay; the return upon them was not dependent upon earnings; in case of default the owner had the right to enforce the obligation; they were transferable. The most important index contra was that the obligation was secondary to the rights of general creditors. So far as the obligation itself, and the documentary evidence thereof, i. e., the negotiable paper, are concerned, we would have no difficulty in finding it a bond and the return upon it interest. But another consideration gives us pause.

While the nature of an obligation can frequently, and indeed usually, be determined from the characteristics of the obligation itself, the nature of the transaction out of which the obligation arose is always material. If money was loaned, the obligation is debt. If money was invested at the risk of the business, the obligation is a participation. The recurrent payments made by a corporation in respect to its debt obligations, which payments are called interest, are deductible by the corporation for income tax purposes. But the recurrent payments made in respect to a risk, or participation, obligation, which payments are called dividends, are not deductible. These are elementary income tax principles. Moreover corporations, their creditors, and their stockholders can, and frequently do, change the nature of the corporate obligations. But for income tax purposes there is a basic rule upon such

---

2. John Kelley Co. v. Commissioner of Internal Revenue, 1946, 326 U.S. 521, 698, 66 S.Ct. 299, 90 L.Ed. 278; Commissioner of Internal Revenue v. H. P. Hood & Sons, 1 Cir., 1944, 141 F.2d 467; Commissioner of Internal Revenue v. Proctor Shop, 9 Cir., 1936, 82 F.2d 792; Commissioner of Internal Revenue v. O. P. P. Holding Corp., 2 Cir., 1935, 76 F.2d 11.

changes. A taxable-income source cannot be changed to a non-taxable-income source without a recognition of taxability somewhere in the process. And for like reasons a non-deductible course of payments cannot be changed to a deductible course unless a corresponding change be made in the taxability of the payments to the recipients. Many and complex problems have arisen in this field of taxation. But basically all features of such transactions are treated as intermeshed, and there is no escape from taxability in a change from taxable to non-taxable.

In the case at bar Smith et al. had a perfect right to change their relationship with the corporation from that of stockholders to that of bondholders, to change the nature of the obligation of the corporation from that of participation to that of debt. Moreover they clearly made the change so far as the requirements and forms of the general law of corporations are concerned. But the question is whether they did so in respect of the requirements of the income tax law. In the old corporation they had a stock interest of which, among other things, about $72,000 was earned surplus (*i. e.,* accumulated profits) and about $78,000 was an increment in the value of assets. If a distribution had been made from those amounts, it would have been taxable to Smith et al. as dividend income. In the new corporation Smith et al. had a creditor interest (for general purposes) in an amount of $150,000, and (ignoring for the moment the complicating factor of the precedent change in character), if any part of that amount had been distributed to them, it would not have been taxable, being a repayment of debt. But Smith et al. could not change (for income tax purposes) the taxable surplus of the corporation to a non-taxable debt without recognizing income taxability on the principal somewhere in the process. They could not change, for income tax purposes, their $150,000 stock interest, which was in the form of a surplus, into a $150,000 debt obligation, without paying an income tax on the principal amount involved. Similarly, they could not change the nature of the fruits of that principal without such payment.

So, from the standpoint of Smith et al. as individuals, the question is whether the reorganization transformed into interest that which had been dividends. And from the standpoint of the corporation the question is whether the reorganization changed non-deductible dividends into deductible interest.

We are of the view that the change could not be effected for income tax purposes unless taxability of the principal to Smith et al. was recognized somewhere in the course of the transactions. On the other hand, if the transaction had all the incidents which, from an income tax viewpoint, would complete the transition from risk investment to debt obligation, Smith et al. might be entitled to whatever benefits would accrue from such a transition. If Smith et al. paid an income tax on the principal of their accumulated surplus, as though it had been distributed to them, their right to lend that principal is unimpeded by tax considerations.

The Board of Tax Appeals did not consider the foregoing phases of the case, obviously for the reason that the District of Columbia statute does not levy a tax on gains from the sale or exchange of capital assets (property held more than two years)[3] and so the Board was not concerned with the taxability of the exchange in this reorganization. But, under the peculiar circumstances of this particular case, it seems to us that this phase of the question must be explored and decided. The local statute requires that the District Assessor "apply as far as practicable the administrative and judicial interpretations of the Federal income—tax law so that computations of income for purposes of this title shall be, as nearly as practicable, identical with the calculations required for Federal income-tax purposes."[4] If it were held in the present case that these distributions are interest, and if it were at the same time

---

3. 53 Stat. 1091 (1939), D.C.Code § 47—1506(a) (1940).

4. 53 Stat. 1100 (1939), D.C.Code § 47—1529(a) (1940).

held in respect to federal income taxation that they are not interest, a most confusing conflict would occur. We have no doubt that the decision on interest *vel non* in respect to federal taxes will depend in large measure upon whether the reorganization is held to be a taxable transaction or not. And so the inquiry in the matter before us leads rather directly to the federal question of the taxability resulting to Smith et al. upon the reorganization, or exchange of securities, under the Internal Revenue Code. That, of course, is a question for federal authorities, and we think that the proper treatment for local tax purposes of questions which are related to questions under the federal statutes, is, in the first instance, a matter for the consideration of the local taxing authorities. In other words we think that the District Board of Tax Appeals should ascertain what the federal disposition of the basic question in this case was and then determine what effect should be given that determination in the specific matter of local taxes. We shall, therefore, remand the case to the Board for its further consideration of the problem in the light of the treatment properly to be given it under federal income tax law and the coordination required by the local statute between that federal treatment and the local treatment. For purposes of the remand the decision of the Board is reversed.